## Cardiota *v.* Cunningham Piano Co. et al., Appellants.

*Workmen's compensation—Course of employment—Evidence—Circumstantial evidence—Appeals—Act of June 26, 1919, P. L. 642.*

In a claim for compensation under the Workmen's Compensation Law, it appeared that plaintiff's husband was killed in an automobile accident and that he was employed as piano tuner, repairman and salesman by the defendant company, with place of business located in Philadelphia. It further appeared that he was expected to use an automobile and go wherever he had a prospect of making a sale, and that the place where he was killed was one to which his duties required him to go if he believed that he might effect a sale in that locality.

Under such circumstances, the evidence was sufficient to warrant a finding that the deceased was acting in the course of his employment at the time of the accident.

While the Act of June 26, 1919, P. L. 642, brings the evidence before the Appellate Court in workmen's compensation cases, the revisory powers of the Court are limited to the determination of the question whether there is sufficient evidence to support the finding, and whether the law has been properly applied; it does not enable the Court to weigh conflicting evidence or to decide what inferences should be drawn therefrom.

The fact whether the deceased was acting in the course of his employment at the time of the accident, like any other fact, may be found from circumstances.

Argued December 15, 1925. Appeal No. 359, October T., 1925, by defendants from judgment of C. P. No. 2 Philadelphia County, March T., 1925, No. 10136, on verdict for plaintiff in the case of Jennie Cardiota v. Cunningham Piano Co. and Maryland Casualty Company, Insurance Carrier. Before ORLADY, P. J., POR-

TER, HENDERSON, TREXLER, KELLER, LINN and GAW-
THROP, JJ.  Affirmed.

Appeal from decision of Workmen's Compensation
Board.  Before GORDON and LEWIS, JJ.

The facts are stated in the opinion of the Superior
Court.

Decision affirmed.  Defendant appealed.

*Error assigned* was the order of the Court.

*Louis Wagner,* and with him *R. A. Smith* and *W. F.
Whittle,* for appellants.

*Claude O. Lanciano,* for appellee.

OPINION BY PORTER, J., February 26, 1926:

The Cunningham Piano Co. is engaged in the busi-
ness of selling pianos, and repairing and tuning such
instruments, as an incident of the business. Anthony
Cardiota, the deceased husband of the plaintiff, had
been employed by the piano company, as a tuner, re-
pairman and salesman for many years when, on July
18, 1923, he was killed by the up-setting of his auto-
mobile on a highway in Bucks County.  The store of
the piano company is located at 1101 Chestnut St.,
Philadelphia.  The widow, this plaintiff, presented a
petition to the Workmen's Compensation Board, aver-
ring that the deceased had been killed as the result
of an accident in the course of his employment.  She
was awarded compensation by the referee, which was
affirmed by the Compensation Board and the court be-
low; hence, this appeal by the defendants.

The appellants contend that, as the accident did not
occur on the premises of the employer, there was no
competent evidence to sustain the finding of the referee
that the injuries resulting in the death of the husband

of plaintiff occurred in the course of his employment; that the employee was not, at the time he was killed, engaged in the furtherance of the business and affairs of the employer. The evidence as to the character of the duties of this deceased employee was uncontradicted and clearly disclosed that those duties were not to be performed upon the premises of the employer. The tuning and repairing of pianos was done at the homes of the customers, but this work was only a part of the duties of the deceased. He was also a salesman. He some times received suggestions, or as the witnesses said "prospects" from the prospect department which it was his duty to go out and investigate and endeavor to make a sale, but in addition to this he was engaged and expected to hunt up prospects, wherever they could be found, and endeavor to make sales. This branch of the business was more profitable both to the employer and the employee, and was to be given preference over tuning and repairing work. One of the witnesses who had charge of the management of the piano company's business thus testified upon that point: "very often they get an order for tuning and they get a prospect for a sale and they will bring in the prospect and leave the tuning orders go. In other words, they make more selling a piano, they will drop every order of tuning, in order to sell a piano." "Q. Their real employment to you is in the missionary field to bring in prospects to sell a piano? A. Yes. Q. If they have a hunch they can find a prospect any place they will try to find them? A. Yes. Q. And you encourage them? A. Yes." On the morning of the accident the deceased had been given several orders for tuning pianos in the city of Philadelphia, at about eight-thirty o'clock in the morning; and two hours later he was found in a dying condition under his automobile upon a highway in Bucks County. L. P. Horn, the witness whose testimony is

above quoted, who was very familiar with the manner
in which the piano company did business, testified that
so far as the general run of the business of the com-
pany was concerned the deceased was in the employ of
the piano company upon the day he was killed, that
he had been given several orders that day for tuning
pianos, but that those orders did not confine him to
any particular territory, that the company encouraged
him to go anywhere if he thought he could make a
sale, and that in the course of his employment it was
his duty to hunt up such prospects. This witness testi-
fied that the salesmen were expected to use auto-
mobiles and that the automobile had obliterated coun-
ty lines; that when a man received orders for tuning
pianos in south Philadelphia that did not confine him
for that day to that particular territory; that he was
expected to go anywhere that he might have a pros-
pect of making a sale. "Q. The fact that you gave
him work to do happened to be in south Philadelphia,
from your experience and from your encouragement,
there is nothing significant that he was in Bucks Coun-
ty that morning? A. Not if he had a prospect there."
It thus appears that the deceased had a roving com-
mission, which required him to be absent from the
premises of the employer and to go wherever he be-
lieved he had prospect of making a sale, and that he
was expected to disregard orders for tuning pianos
in order to pick up prospects for sales. One question
and the answer thereto by this witness is especially
applicable to the facts in this case, viz: "Q. It isn't
unusual for a man to tune a piano in south Philadel-
phia and find a person had some relative living in
Bucks County that the salesman might jump out there
and look up the prospect? A. That is usual". When
Cardiota was found, in a dying condition, under his
automobile in Bucks County, he had with him his tools
for tuning pianos and parts to be used in the repair

of such instruments.  Mr. Horn testified that the deceased had worked under his supervision for five and a half years; that he had always found him to be a good workman and never had anything against his character, and that he had applied himself to the sale and tuning of pianos in accordance with his employment contract.  There was introduced before the referee some hearsay evidence which might indicate that the deceased had departed from the course of his employment, but that evidence was so clearly incompetent that it can have no weight in the determination of this case.

The nature of the duties which the deceased was encouraged and expected to perform required him to be active and drive from place to place.  The place where he was killed was one to which his duty required him to go if he believed that he might effect a sale in that locality.  There was no competent evidence which would have warranted a finding that he went there for any other purpose.  He carried with him the tools of his trade.  He was killed before he had an opportunity to report to his employer whether he had discovered a prospect for a sale.  Although the Act of June 26, 1919, P. L. 642, brings the evidence before us for review in this class of cases, we are without jurisdiction to weigh conflicting evidence and the inferences therefrom arising; our revisory powers are limited to the determination of the question whether there is evidence to support the findings, and whether the law has been properly applied to them; Yodis v. Phila. & Reading C. & I. Co., 269 Pa. 586; Zelazny v. Seneca Coal Mining Co., 275 Pa. 397; Rodman v. Smedley, 276 Pa. 296.  The fact whether the deceased was acting in the course of his employment at the time of the accident, like any other fact, may be found from circumstances; here a man who for years had faithfully discharged the duties of his employment, was

found in a dying condition, as the result of an accident, which occurred at a place where the terms of his employment might require him to go, and had with him the tools of his trade. We have reached the conclusion that there was sufficient evidence to sustain the finding of the referee. The assignments of error are dismissed.

The judgment is affirmed.