# Hunter *v.* American Steel & Wire Co., Appellant.

*Workmen's compensation—Appeals—Review—Findings of fact —Evidence.*

1. Although, by direction of the Workmen's Compensation Act, the appellate court has the entire record before it on appeal, its revisory powers are limited to a determination of the question whether there is competent evidence to support the findings and whether the law has been properly applied in accordance with the findings.

2. The legislature has confided to the compensation board and the referees the exclusive function of determining what facts are established.

*Workmen's compensation—Course of employment—Drowning— "Premises"—"Property"—Words and phrases.*

3. An injury in the course of employment does not include injuries received while away from the actual place of employment where the deviation or departure is wholly foreign to the employee's duties and amounts to an abandonment of employment.

4. The word "premises" in the Workmen's Compensation Act has a narrower meaning than "property"; it means the place where the employee's presence must ordinarily be required.

5. If the employee is injured on the premises where the duties do not require him to be, the departure from the usual place of employment must not amount to an abandonment of employment or become an act wholly foreign to his usual work, but must be an innocent or inconsequential departure from the place of duty.

6. If the employee leaves the premises, his employer is not bound to pay compensation unless the employee was actually engaged in the furtherance of his master's business.

7. Compensation for the death of an engineer in a steel works will not be allowed where it appears that he was found drowned in a river 350 feet from the engine room, where he was employed, that he must have met his death after he had abandoned his employment for the night, and that his presence on or near the river was not called for by his employment.

Argued March 12, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 149, March T., 1927, by defendant, from judgment of C. P. Westmoreland Co., May T., 1926, No. 1037, affirming decision of Workmen's Compensation Board, in case of Carrie Hunter v. American Steel & Wire Company. Reversed.

Appeal from decision of Workmen's Compensation Board reversing referee. Before COPELAND, P. J.

The opinion of the Supreme Court states the facts.

Decision of Workmen's Compensation Board affirmed. Defendant appealed.

*Error assigned* was judgment, quoting record.

*P. K. Motheral,* with him *Reed, Smith, Shaw & Mc-Clay,* for appellant, cited: Roach v. Lever Co., 274 Pa. 139; Flucker v. Steel Co., 263 Pa. 113; Laraio v. R. R., 277 Pa. 382; Zelazny v. Coal Mining Co., 275 Pa. 397; Haddock v. Steel Co., 263 Pa. 120.

*Roy J. Carson,* of *Carson & Stahlman,* for appellee; cited: Dzikowska v. Steel Co., 259 Pa. 578; Laraio v. R. R., 277 Pa. 382; Zelazny v. Coal Mining Co., 275 Pa. 397; Granville v. Coal Co., 76 Pa. Superior Ct. 335; Flucker v. Steel Co., 263 Pa. 113; Rodman v. Smedley, 276 Pa. 296; Hale v. Fire Brick Co., 75 Pa.

Superior Ct. 454; Lyons v. Savings Bank, 251 Pa. 569; Callihan v. Montgomery, 272 Pa. 56; Ford v. Dick Co., 288 Pa. 140.

OPINION BY MR. JUSTICE KEPHART, April 9, 1928:

On the morning of the 27th of November, 1923, the dead bodies of Hunter and Boyd, employees of defendant, were found at Donora in the Monongahela River close to the shore of defendant's property. Both had been drowned. Appellee filed a petition as claimant for compensation under the Workmen's Compensation Act of June 2, 1915, P. L. 736, alleging Hunter's death was the result of an accident occurring in the course of his employment on the premises of defendant. The claim was disallowed by the referee. The compensation board, after a hearing de novo, reversed the finding of the referee and awarded compensation. This conclusion was affirmed by the court below. On appeal to this court, the sole question before us is whether there is competent evidence to support the finding of the compensation board that Hunter met death by accident while in the course of his employment and on the premises of defendant.

As has frequently been stated by this court, the findings of the Workmen's Compensation Board, supported by evidence, have the weight of the verdict of a jury (Sgattone v. Mulholland & Gotwals, Inc., 290 Pa. 341), and hence, although, by direction of that Act, the appellate court has the entire record before it, its revisory powers are limited to a determination of the question whether there is competent evidence to support the findings and whether the law has been properly applied in accordance with the findings; and, though we may be of opinion, from the apparent weight of the evidence, that a finding should have been made adverse to that of the board, we are not at liberty to enter or direct a different conclusion when the one adopted by the board is supported by proof. The legislature has confided to

the compensation board and referees the exclusive function of determining what facts are established: Kuca v. Lehigh Valley Coal Co., 268 Pa. 163.

The undisputed facts show that Hunter had been for some time in the continuous employ of defendant, and, at the time of his death, his employment was that of stationary engineer; that on the night of November 23, 1923, he and Boyd and two other employees were in the engine room at work; at 9:15 in the evening, both men, clad in their working garments, left the engine room, apparently for the purpose of attending to some of nature's necessities. Hunter was not afterwards seen alive. Boyd was last seen some minutes after 9:15, about 9:30, when he entered a paint shop alone, greeted a workman, took a drink of water and immediately departed. Nothing more was heard or seen of either men until four days later, when Hunter's body was discovered in the river lying partially under the lower end of a barge that was moored to pilings supporting a long boardwalk or deck, both owned and utilized for unloading material required by defendant. The body of Boyd was found in the same vicinity a few hours later.

We recently stated in Shoffler v. Lehigh Valley Coal Company, 290 Pa. 480, that an injury in the course of employment did not include (a) injuries received while away from the actual place of employment where the deviation or departure is wholly foreign to the employee's duties and amounts to an abandonment of employment; (b) injuries received in commission of an act which is in direct violation of the law, or (c) an act contrary to the positive orders of the employer. We have also held that the term "premises" has a narrower meaning than "property" (Palko v. Taylor-McCoy C. & C. Co., 289 Pa. 401, 405), and that, as used in the Workmen's Compensation Act, it means the place where the employee's presence must ordinarily be required: Shoffler v. Lehigh Valley Coal Co., supra, at p. 483. If the

employee is injured on the premises where his duties do not require him to be, the departure from the usual place of employment must not amount to an abandonment of employment or become an act wholly foreign to his usual work, but must be an innocent or inconsequential departure from the place of duty. If the employee leaves the premises, his employer is not bound to pay compensation unless the employee was actually engaged in the furtherance of his master's business: Maguire v. Jas. Lees & Sons Co., 273 Pa. 85; Palko v. Taylor-McCoy Coal & Coke Co., supra).

The immediate question in this case is whether there is sufficient competent evidence to support the finding of the court below that the injury occurred on the premises in the course of employment. The hours of employment include those set apart for leisure, rest, recreation or refreshment, or attending calls of nature. Hunter went to work at the usual hour, 3:00 o'clock in the afternoon. His quitting time was 11:00 o'clock that night. He changed his street clothes, placing them in the locker, where they were found after his death. The regular foreman was not present and Boyd was made temporary foreman. Without offering any explanation, he left the room at 9:15 o'clock. The distance between the engine room where Hunter and Boyd were working and the river's edge is approximately 350 feet. To reach it, they pass over two railroad tracks, around the power house and over two more railroad tracks. From the pipe house where Boyd was last seen, they must travel 125 feet or more to the river. What happened to Hunter after leaving the engine room and to Boyd after leaving the pipe house are mere matters of conjecture.

The board was of the belief that Boyd and Hunter walked to the river and fell from the foot-walk or dock, erected along the river side, into the water. There is some evidence that there was a small fire on the other side of the river and a boat was later discovered upside

down; on this the theory might be built that the men were attempting to cross the river when the boat upset, causing them to drown. Whatever may be our surmise as to how the men came to be in the water, there is not a scintilla of evidence that their duties in any aspect required them to be near the river. It is equally certain, from the evidence of record, the place to which they strolled on that fatal evening was not on the premises of defendant as it related to their normal employment, even taking into account such immediate adjoining territory which might be reasonably considered a recreation area. While the mere fact that they attended to a personal demand would not *break the continuity of employment (Ferri v. Lenni Quarry Co., 266 Pa. 264), and the paint shop for the purpose of this case may be considered as being on the premises of defendant (there being other places nearer), the right to thus attend their wants or recreate themselves could not be construed as a privilege to roam anywhere on the premises. The referee correctly found from the evidence before him, which does not differ in substantial particulars from that before the board, that "no duty or business called Hunter to the bank of the Monongahela River or upon the river itself, which was 350 feet from his proper working place and 125 feet from the toilet in the power house, which was the nearest one to the river where he could have administered to his personal needs and which was the farthest from his regular place of employment (other toilets being nearer and more convenient), and when Hunter met his death he was not engaged in the furtherance of the business or affairs of his employer, his duties being confined to Engine Room No. 1, his regular working place, and nothing in the nature of his employment required his presence within at least 125 feet from the Monongahela River where his body was found. There was nothing in the nature of his employment, or the fact that he was traveling around for exercise, that would grant him the right to go this distance."

In principle, this case is ruled by clause "A" quoted from Shoffler v. Lehigh Valley Coal Co., supra, and Kuca v. Lehigh Valley Coal Co., supra. In the latter case, the employee went about 500 feet from where his duty called him, and we held his death did not occur in the course of employment, or on the premises as it related to his work. In line with this case, see also Wilson v. H. C. Frick Coke Co., 268 Pa. 256; Callihan v. Montgomery, 272 Pa. 56, 65; 10 A. L. R. 1486, note; Weis Paper Mill Co. v. Industrial Commission, 293 Ill. 284, 127 N. E. 732; Manor v. Pennington, 167 N. Y. Supp. 424; Booarde v. Industrial Commission, 141 N. E. 399.

Claimant refers to Flucker v. Carnegie Steel Company, 263 Pa. 113, as an authority to support the claim. The facts of the two cases are very different. In that case, it was the duty of claimant's husband to look after two pumping stations 350 feet apart, separated by a ravine. There was a foot-bridge to enable the employees to go from one side to another. The employee was required to cross about every three hours. His body was found eight feet below the trestle of the bridge. There was snow and ice on the trestle. We held the deceased met death in the line of duty while traveling to and from his work. Here, Hunter was drowned apparently after abandoning his employment.

The judgment is reversed.