Zapos, Appellant, *v.* Demas et al.

Argued April 27, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*H. Stewart Dunn* of *Thompson, Rose, Bechman & Dunn,* for appellant.

*Francis A. Wolf,* and with him *Meyer & Nunnink,* for appellee.

OPINION BY CUNNINGHAM, J., July 14, 1932:

The street accident in which Gust P. Zapos, husband of the claimant in this compensation case, was fatally injured happened off the premises of his employer, Peter Demas, a restaurant proprietor in Pittsburgh. To the claim filed by the widow, in behalf of herself and three minor children, the only defense pleaded was that Zapos "was not actually engaged in his master's business at the time he met with his injury."

There are no conflicts in the testimony relative to the character or terms of the employment or the circumstances of the accident. The referee awarded compensation and the board affirmed; upon appeal by the employer and his insurance carrier to the common pleas, the award was reversed and judgment entered in favor of the employer; hence this appeal by claimant.

The only question now involved is whether the court below properly applied the law to the facts appearing from the evidence.

The referee's fifth finding of fact, adopted by the board, reads: "The deceased was employed [six months prior to the accident] by the defendant and was instructed by the defendant that his duties would be waiting on tables, buying meat and groceries and running errands. All these duties were required by the defendant at the time of hiring, and the hiring and the pay of the deceased was based upon the above services

demanded by the defendant. On the day of his death the deceased was directed, as had been the usual custom, to go to the meat market, where defendant regularly dealt, and procure meat for the restaurant, which meat was to be delivered by the market. It was also the custom, when buying meat for the restaurant, to buy meat and groceries for defendant's household. Deceased would go to the market, give the order to be delivered to the restaurant, and then would purchase orders for the defendant's household, deliver such commodities in person to defendant's house, and then return to the restaurant. On this particular day, November 6, 1930, the deceased had stopped at the market and left the order for the restaurant, and had procured and delivered to the defendant's household his personal order, and was returning to the restaurant at about 3:30 P. M., when he was struck by an automobile and street car, receiving injuries from which he died the same day in the Magee Hospital, Pittsburgh, Pa.''

In reviewing the facts the writer of the opinion in the common pleas added' this paragraph: ''Defendant's home, where the meat was delivered, was more than twenty squares east of the butcher shop in question and the butcher shop was in the seventh square in a generally northern direction from defendant's restaurant, the restaurant being at 211 Grant Street, and the butcher shop being at Sixth and Wylie Avenues. This recital of distances and directions does not specifically appear in the records but is a matter of which we take judicial notice from the disclosed locations of the places referred to in the testimony.''

By way of amplification, we may add that the employer described the nature and extent of the employment in these words: ''He had charge of the place; head waiter, and he was doing the buying, giving orders and taking charge of the help too.'' He also stated that as he was crippled he sent Zapos on similar

186

errands two or three times each week and that payment for such services was included in his "regular wages."

An effort was made by counsel for the employer to have him state that the errand to his home "had nothing to do with [his] business," but it was not entirely successful and, of course, his views upon that important matter would not be conclusive.

A portion of the employer's testimony reads: "Q. This errand that you speak of, that he made for you on the day of the accident, that was an errand purely personal to yourself, is that right? A. Yes. Q. That was for your home? A. Yes. Q. It had nothing to do with your business? A. We had no agreement in writing to do this, but verbal agreement. Q. What I am getting at, Pete is—that taking home this meat that day of the accident for you, was not a part of his employment? A. Well, he was hired to do anything for me, when he was working for me. Q. But the delivering of the meat to your home that wasn't a part of the agreement of your employment; nothing was said about that when you employed him? A. We had no such written agreement, you know, but he has to do the work just the same; if not in the store, he has got to do something else. ...... Q. That [errand] had nothing to do with your business? A. Well, of course — Q. —Well, it didn't have anything to do with managing your restaurant? A. He was working for me. Q. It had nothing to do with running your business at 211 Grant Street? A. No, that is personal, of course."

The applicable provision of our Workmen's Compensation Law is that the term, "injury by an accident in the course of his employment," shall include an injury "sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises

or elsewhere." Among those excluded from the benefits of the act are persons "whose employment is casual in character and not in the regular course of the business of the employer." It was contended on behalf of the employer, and particularly by the insurance carrier, that the services Zapos was rendering at the time of the accident were not being performed in furtherance of the "business" of the employer.

In an able opinion the court below reviewed the authorities and, relying chiefly upon our case of Zenker v. Zenker and the Fidelity and Casualty Company of New York, 93 Pa. Superior Ct. 255, and Hunter v. American Steel and Wire Company, 293 Pa. 103, adopted the contention of the employer. Claimant, on the other hand, contended that the facts in the case at bar exclude it from the principle of those cases and bring it within the theory upon which compensation was awarded in such cases as Geary v. Martin et al., 101 Pa. Superior Ct. 311, and Bridge v. Lomax, 69 Pa. Superior Ct. 109.

We think there is a plain distinction between the Zenker case and the one now under consideration. There the errand had nothing whatever to do with the business of the employer. He was a contractor and builder doing business in Scranton and employing from five to twelve men, among whom was his son; at the instance of the employer's wife, the son was directed to drive her and other members of the family, in his own car, on a vacation trip to a point in the state of New York; the injury occurred as he was returning alone. It is clear this was a family trip for pleasure and not even remotely connected with the business of the employer.

In considering the liability of an insurance carrier under such circumstances, KELLER, J., speaking for this court, said: "It seems clear to us that the act contemplates the insurance of an employer with re-

spect to the business which he is carrying on—not with respect to roving errands wholly disconnected and apart from the business which the employer is conducting and with respect to which he secures compensation insurance.'' Referring to the kind of a connection which should appear from the evidence, this language was used: ''The connection or interest need not be close—the injury need not arise out of the employment—but when the accident occurs off the employer's premises, the errand or work of the employe must bear some relation to the business, enterprise, trade or profession whose operations were insured.''

Here the employe, at the express direction of the employer, left the premises upon an errand, the main purpose of which—purchasing supplies for the restaurant—was most intimately connected with his employer's business; it was his duty to return to the premises but he was killed before he had reached them upon his return journey. If the accident had occurred while he was returning by a direct route there could be no possible question about the liability of his employer and the insurance carrier. The controlling question, therefore, relates to the circumstances and purpose of his deviation from such route. Clearly, it was not for the purpose of attending to any matter in which he was personally concerned; he was executing a direct command of his employer.

Geary v. Martin et al., supra, is an illustration of an incidental variation by an employe from his ordinary duties. In that case the employer's business was coal dredging and the employe had been employed as a chauffeur and general utility man. There was evidence that in several instances the employe, by direction of his employer, performed duties of the character usually performed by domestic servants. The accident occurred while the employe was preparing meat for roasting. His claim for compensation was resisted

upon the ground that when injured he was engaged in the work of a domestic servant. This court held, in an opinion by TREXLER, P. J., that an injury suffered while doing such incidental work at the request of the employer is compensable. In Hunter v. American Steel and Wire Company, 293 Pa. 103, cited by the court below, the circumstances indicated that the accident occurred at a place where nothing in any way connected with his employment required the employe to go; as his presence there was wholly foreign to his duties, it amounted to an abandonment of his employment.

We are of opinion, upon a careful consideration of all the facts, that the service in which claimant's husband was engaged at the time of his accidental injury was such an incidental errand, and so closely related to the general business and affairs of his employer, that a proper application of the law to the established facts results in the conclusion that he was within the course of his employment to such an extent as to render his employer and the insurance carrier liable for compensation to his dependents. This was not a personal or roving errand disconnected from the business of the employer, but the performance of a duty which, we think, was within the risk undertaken by the insurance carrier.

The judgment is reversed and the record remitted to the court below with instructions to enter judgment upon the award as affirmed by the board.