A. Kolasa *v.* B. Stubnickie et al.; Appellant.

Argued May 8, 1933. Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Harry J. Nesbit,* for appellant.

*Mead G. Mulvihill* of *Mulvihill & Herron,* and with him *Blair F. Gunther,* for appellee.

OPINION BY KELLER, J., July 14, 1933:

Joe Kolasa, the claimant's husband, was killed in a collision between the automobile he was driving and a street car. He worked for B. Stubnickie, a baker, soliciting customers, delivering bread and collecting accounts. He was the only person employed for those purposes. His working day was not limited as to hours, and frequently he made trips in the evening on his employer's business—about three times a week, his employer testified. When making collections for his employer in the evening he generally used his own car, rather than his employer's truck, which was "in pretty bad shape."

At seven o'clock on the morning of June 7, 1931, he left his employer's bakery at Fairhope to deliver bread, returning about eleven o'clock. His employer then told him to try to collect some money, which he needed to buy flour. He worked about the bakery and left for his home about three o'clock. At seven o'clock that evening, still in his working clothes, he started out in his own car to make collections for his employer. He called on two customers, Druciak and Reymant, but they had no money to pay on their back bills. At his morning call on Mike Krill, a merchant in Belle Vernon, to deliver goods, it had been arranged between them that he should call that evening to collect. While on his way back from Druciak's and Reymant's places of business he met two girls walking, one of whom he knew. They testified that he stopped and asked them if they were going to Belle Vernon; that they said they were, and asked him if he were going there; that he said, "Fairhope." They got in the car and when they got to Fairhope he continued on towards Belle Vernon, arriving at the

intersection of Fayette Street and Broad Avenue shortly before 8:30 o'clock. The record does not show at what point the girls left the car. Krill's store was located on Broad Avenue to the east of Fayette Street, or on his right as he was traveling on Fayette Street. He had not yet called on Krill, pursuant to the arrangement made in the morning. There was a large firemen's parade in Belle Vernon on Broad Avenue that evening, participated in by thirty companies. The traffic on Broad Avenue east of Fayette Street was congested and an officer stood there directing traffic. Kolasa turned west, or to the left on Broad Avenue and was hit by the street car about 550 feet west of the intersection, and about twenty feet east of Cherry Avenue, an intersecting street. If prevented by the congested traffic on Broad Avenue, east of Fayette Street, from going directly to Krill's store, he could get there by going one block north on Cherry Avenue and then eastward on a street parallel to Broad Avenue, returning again to Broad Avenue above the congestion in traffic.

The question involved in the case is whether at the time of the accident Kolasa was in the course of his employment or furthering the interests of his employer.

The referee, after two hearings—the case was referred to him by the board a second time—, found that Kolasa left his home that evening after supper, to carry out the instructions of his employer to try to collect some money; that he called on a customer at Fayette City [Druciak], with whom he had an appointment and handed him a bill for the amount due by him, but was not able to secure the money; that he then called on another customer in the same place [Reymant], and then got in his car and proceeded in the direction of Belle Vernon, where he had an appointment to meet another customer [Krill],

who was to pay him some money; that he went to Belle Vernon intending to keep this appointment and while on his way there received the accidental injuries which resulted in his death; and that at the time he was so injured, he was in the course of his employment and engaged in furthering his employer's business. He also found that the deflection of his course at Broad Avenue was due to traffic congestion caused by the Firemen's Parade. The employer admitted that the road which Kolasa took from Fayette City to Belle Vernon was the short and better one.

We think the findings, conclusions and award of the referee, which were approved by the board and upheld by the court below, are supported by the evidence.

Unquestionably Kolasa started out in the evening on his employer's business to collect money as he had been urged by his employer to do. This was one of his duties and a not unusual one. We said in Beaver v. Boyd, 106 Pa. Superior Ct. 24, 31, 161 Atl. 900, that "having shown him [the employee] to have started out upon the business of his employer, that the presumption would be that he continued in that business until evidence appears to show the contrary." He had arranged with Krill to call at his store that evening to collect money for his employer. He was on his way there, by the nearest and best way, until diverted by the congested traffic incident to a large parade. The fact that he volunteered to take two girls of his acquaintance, whom he passed on the road, along with him and that they understood him to say he was going to Fairhope—which was on the way to Belle Vernon—, was no evidence that he was no longer on his employer's business or engaged in furthering his interests; or that in continuing on to Belle Vernon it was not his intention to keep his

arrangement with Krill and call there on his employer's business. Even if he had intended to stop at Fairhope, when he met the girls, and later concluded to go on to Belle Vernon and keep his appointment with Krill, he would still be engaged in his employer's business and furthering his interests. A slight deviation required, or deemed advisable, because of congested traffic, would not take him out of the course of his employment: Webb v. North Side Amusement Co., 298 Pa. 58, 147 Atl. 846; Zapos v. Demas, 106 Pa. Superior Ct. 183, 161 Atl. 753. The weighing or reconciling of conflicting evidence and deciding what inferences should be drawn therefrom was for the referee and the board; and the fact that the deceased, at the time of the accident, was in the course of his employment, and engaged in furthering his employer's business, like any other fact, might be found from circumstances: Cardiota v. Cunningham Piano Co., 87 Pa. Superior Ct. 458, 462.

The assignments of error are overruled and the judgment is affirmed.