Caviston *v.* Lang et al., Appellants.

Argued March 3, 1943. Before Keller, P. J., Baldrige, Stadtfeld, Rhodes, Hirt, Kenworthey and Reno, JJ.

*G. A. Troutman,* with him *Walter W. Harris,* for appellants.

*D. H. Jenkins,* for appellee.

Opinion by Baldrige, J., April 13, 1943:

This is an appeal in a workmen's compensation case. Margaret M. Caviston filed a claim petition asking that she as a dependent widow of Dominic Caviston, who

died August 1, 1941 as the result of injuries received in an automobile accident occurring in the southern portion of the state of New York, be awarded compensation for herself and five minor children. The employer filed an answer demanding proof that the petitioner is the widow of Dominic Caviston and denying that the decedent was in the course of his employment at the time of the fatal accident.

At the hearing before the referee the testimony produced by the claimant showed that Caviston was an automobile salesman employed and paid on a commission basis by defendant Fred L. Lang, dealer in automobiles, whose principal place of business was in Carbondale, Lackawanna County. On August 1, 1941, the decedent obtained permission from Lang to take a used Ford car "for the balance of the evening" for the purpose of selling it. He met in Carbondale by appointment Paul Farrell, a prospective purchaser, who after a short ride in the car said that he would like Caviston to drive him to Binghamton, New York, to have Miss Marie Correll, his fiancee, see this car, indicating that if it met with her approval he would buy it. Accordingly the journey was made that evening and on the way the decedent explained to Farrell the car's good points. The distance to Binghamton is not mentioned in the testimony, but it was stated at the argument, and not denied, that it is 48 miles. Miss Correll joined these two men at Binghamton intending to return with them to Carbondale. An accident, which was fatal to Caviston, occurred after they had traveled about 7 or 8 miles when Farrell, who had asked permission of Caviston to drive, was at the wheel.

The claimant, who relied upon a common law marriage, testified that when 19 years of age she was married to the decedent in the presence of a justice of the peace on October 19, 1935, when she and the decedent

mutually agreed to be husband and wife. They went to live together on Christmas day of that year as man and wife and five children, one posthumously, were born to the marriage, all of whom were registered in the Bureau of Vital Statistics in Harrisburg as the children of Dominic and Margaret Caviston. Cohabitation and reputation were proven by a number of witnesses.

The referee found that there had been a valid common law marriage and that the decedent met a fatal accident while in the course of his duties as a salesman for the defendant when he was demonstrating a car of the purpose of making a sale to Farrell.

The board upon appeal found that Lang had prohibited a demonstration of cars a distance in excess of 15 miles from Carbondale; that he had no knowledge of the trip to Binghamton, and had not, either expressly or by implication, authorized the decedent to take the car out of the state. It held that when decedent met with the accident he had violated the express orders of his employer as to the demonstration of an automobile and was not in the course of his employment. The defendant's appeal accordingly was sustained. The board stated that in view of its finding it would not pass upon the question whether there had been a valid common law marriage.

The court to which an appeal was taken stated that there was no testimony showing the decedent had no authority to demonstrate the car outside the 15 mile limit and held that when he obtained possession of the car from his employer to get a prospective purchaser interested in buying the car, he was engaged in the furtherance of his employer's business and the presumption is that he continued in that business unless the evidence shows the contrary: *Kolasa v. Stubnickie et al.,* 110 Pa. Superior Ct. 152, 153, 167 A. 246. The court, without discussing the question of whether the claimant was the widow of decedent, sustained excep-

tions and directed a judgment on the award of the referee.

The principal question before us is whether the learned court below had authority to set aside the above finding of the board as unsupported by the evidence and enter a judgment upon the award granted by the referee without further reference to the compensation authorities. It is hardly necessary to repeat what we have frequently, and very recently, said in *Powell v. Hills Garage et al.*, 150 Pa. Superior Ct. 17, 27 A. 2d 773, that neither the lower court nor this court has authority to weigh the evidence and substitute findings for those of the board. Whether the facts establish that the decedent was fatally injured in the course of his employment is however a question of law and is subject to review: *Strunk v. E. D. Huffman & Sons*, 144 Pa. Superior Ct. 429, 434, 19 A. 2d 539. It is well recognized that where an accident occurs off the employer's premises the employee is as a matter of law within the course of his employment if at the time he was actually engaged in the furtherance of the business of his employer and his presence was required by the nature of his employment: *Knowles v. Parker Wylie Carpet Co., Inc. et al.*, 129 Pa. Superior Ct. 257, 195 A. 445. With those principles in mind we are of the opinion that the court below did not exceed its authority in determining the question whether the deceased was killed in the course of his employment. It merely determined, which it had a right to do, that the finding of the board was not supported by competent and substantial evidence.

We agree with the court below that there was nothing in the testimony to warrant the board's findings that Lang had expressly prohibited a sales demonstration at a distance in excess of fifteen miles of Carbondale; that the trip to Binghamton had not been authorized expressly or by implication. It is true that

Lang, in answer to an inquiry whether Caviston had any particular territory that he was to work, said: "Well the rule in that has been approximately fifteen miles surrounding your own territory." That merely meant that he was not to seek customers outside that limited territory, but he was not restricted from giving a demonstration beyond that area. Furthermore, although Lang denied any express consent given to decedent to drive the car beyond the state, he admitted that on the afternoon of the day of the accident he gave permission to Caviston to take the car "for the balance of the evening . . . . . . for the purpose of sale." That was implied authority to Caviston for him to make such a demonstration as might be reasonable without any prohibition against crossing a state line.

The board found in its third finding that "at or about 2:45 P.M., on August 1, 1941, the decedent drove a Ford Mercury convertible car from the defendant's place of business for the purpose of effecting the sale of the car." It having been found that the decedent started out upon the business of his employer, and as there was no evidence of any deviation from his duties thereafter, the presumption is that he continued in the course of his business until the time of the accident: *Kolasa v. Stubnickie,* supra, p. 153.

The mere fact that the accident occurred outside the state does not take this case out of our Workmen's Compensation Act as the decedent at the time of the accident was performing services for his employer and his duties took him temporarily into New York State to promote a sale. The Act of 1939, June 21, P. L. 520, §1, 77 PS §1, provides, inter alia, that the act shall not apply to any accident outside the Commonwealth "except accidents occurring to Pennsylvania employes whose duties require them to go temporarily beyond the territorial limits of the Commonwealth, not over ninety days, when such employes are performing

services for employers whose place of business is within the Commonwealth."

In construing this exception, which first appeared in the amendatory Act of 1929, April 29, P. L. 853, 77 PS §1, we pointed out in *Kelly v. Ochiltree Electric Company*, 125 Pa. Superior Ct. 161, 167, 190 A. 166, that there is no distinction between the terms "in the course of employment" and "performing services for employers" and that the purpose of the amendment was "to put men temporarily performing services outside of the state on a parity with those working within the state, limited only by the extent of time during which such services might be performed."

Since there was left no further fact finding function for the board to perform relative to the "course of employment issue" it was unnecessary, as to that phase of the case, for the court to perform the senseless act of returning the record to the board to enter the only judgment possible under its ruling: *Apker v. Crown Can Company et al.*, 150 Pa. Superior Ct. 302, 28 A. 2d 551; *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256. There does remain, however, the factual issue concerning the marriage. The board ignored that matter because of its ruling on the first question. The record, therefore, must now be remitted for a determination of that question as the board neither adopted, nor rejected, the referee's findings or conclusions in that connection.

It might not be amiss to state that although the claimant's testimony as to her marriage with the decedent is rather vague as to the exact date and place, and she could not produce a marriage license, nevertheless her status as a widow was asserted in her claim petition as based merely upon a common law marriage and as above stated her uncontradicted testimony shows that she and the decedent did enter into a common law marriage, in words of the present tense, lived to-

gether thereafter, reared a fairly large family, and were generally known as husband and wife. We said in *Hornbake v. Hornbake,* 72 Pa. Superior Ct. 605, 607: "...... a marriage ceremony, however defective, may create the relation of husband and wife, if subsequently ratified by cohabitation, the birth of children, and a holding forth by both parties as man and wife ......" With regard to statutory requirements concerning a license, the opinion then continues: "...... while the failure of the parties to comply with such acts may lay them open to prosecution or fine, the marriage relation is not avoided thereby ......"

A decision relative to the validity of the common law marriage will automatically answer the final question raised by the appellant as to the right of decedent's fifth child, who was born posthumously, to receive compensation. See section 307 of the Workmen's Compensation Act of 1915, June 2, P. L. 736, as last amended by the Act of 1939, June 21, P. L. 520, 77 PS §§561, 562.

The judgment is reversed and the record is ordered remitted to the Workmen's Compensation Board for further action consonant with this opinion.