**Barbara Ann GRIFFIN, a minor by her next of friend, Katherine Elizabeth Davis, Individually and on behalf of all others similarly situated**

v.

**Elliot RICHARDSON, Secretary, Department of Health, Education and Welfare, Individually and in his official capacity.**

**Civ. No. 71–1404.**

United States District Court,
D. Maryland.

July 6, 1972.

C. Christopher Brown, Gerald L. Hockstein, and Richard Rosen, Baltimore, Md., for plaintiff.

Kenneth A. Rutherford, Dept. of Justice, Washington, D. C., George Beall, U. S. Atty., and Jean G. Rogers, Asst. U. S. Atty., Baltimore, Md., for defendant.

Before SOBELOFF, Senior Circuit Judge, and MURRAY and BLAIR, District Judges.

## OPINION

BLAIR, District Judge.

This suit, brought in forma pauperis, challenges the constitutionality of § 203(a) of the Social Security Act, 42 U. S.C. § 403(a), on the ground that it discriminates against certain illegitimate children in denying them benefits under the Act in violation of the due process clause of the Fifth Amendment. Plaintiff seeks injunctive and declaratory relief for herself and on behalf of a class of all similarly situated persons. A three-judge court was convened pursuant to 28 U.S.C. §§ 2282, 2284.

The essential facts are presented by cross-motions for summary judgment, are not disputed and may be stated briefly. Plaintiff's father, James T. Hall, died on August 21, 1969 in Baltimore, Maryland. At his death, his survivors were entitled to a maximum family payment of $296.00 per month.[1] Approximately 10 months earlier, on October 26, 1968, James T. Hall married Bernice Hall who had four children from previous relationships. These children became his stepchildren as a result of the marriage. James T. Hall and Bernice Hall separated a few weeks after their marriage and remained apart until his death. After his death, Bernice Hall claimed and was awarded surviving child's insurance benefits by the Social Security Administration for her four children and herself. Plaintiff Barbara Griffin, born October 8, 1960, is the natural child of James Hall and a woman to whom he was not married. As the result of an order of the Criminal Court of Baltimore City passed on December 6, 1960 and to which he had consented, James Hall was required to support and did in fact support Barbara Griffin until the time of his death. After the death of James Hall, Barbara Griffin through her guardian, Katherine Davis, made claim to the Social Security Administration for child's insurance benefits. Social Security determined that the plaintiff met the requirements of § 216(h)(3)[2] permitting benefits to be

---

1. The current maximum payment is $325.60 per month.

2. (3) An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:

    [Subsections 216(h) (3) (A) and (B) applying to old age and disability benefits, respectively, have provisions identical to those in subsection 216(h) (3) (C) except, of course, that the basis for receipt of benefits is different.]

    (C) in the case of a deceased individual—
      (i) such insured individual—

      (I) had acknowledged in writing that the applicant is his son or daughter,
      (II) had been decreed by a court to be the father of the applicant, or
      (III) had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter, and such acknowledgment, court decree, or court order was made before the death of such insured individual, or
      (ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.

paid to certain illegitimate children. It was also determined that benefits could not be presently paid because of the provisions of § 203(a).

The pertinent provisions of § 203(a) provide that:

Whenever a reduction is made under this subsection in the total of monthly benefits to which individuals are entitled for any month on the basis of the wages and self-employment income of an insured individual, each such benefit other than the old-age or disability insurance benefit shall be proportionately decreased; except that if such total of benefits for such month includes any benefit or benefits under section 402(d) of this title which are payable solely by reason of section 416 (h)(3) of this title, the reduction shall be first applied to reduce (proportionately where there is more than one benefit so payable) the benefits so payable (but not below zero).

The effect of this provision is that the plaintiff, although qualified under the Act to receive benefits notwithstanding her illegitimacy, is denied the actual receipt of such benefits in this case so long as there is a favored class under § 203(a) which exhausts the maximum

family allowance for the qualified survivors of James T. Hall.[3] In essence plaintiff contends that this statutory scheme results in an unconstitutional discrimination against illegitimate children who are otherwise qualified under the provisions of § 216(h)(3) to receive benefits, but who are either denied benefits so long as there are a sufficient number of persons in a more favored class who exhaust the maximum family allowance, or at any rate who do not share equally with the other beneficiaries. As frequent reference will be made to the fact, it is important to note that certain illegitimate children may qualify for benefits under § 216(h)(2) and thereby entirely avoid the effects of § 203(a) which only applies to § 216 (h)(3).[4]

■ The Secretary has moved to dissolve the three-judge court on the grounds that no substantial federal question is involved and that plaintiff's remedy for review of the denial of benefits must come under 42 U.S.C. § 405(g) which is that portion of the Act providing for judicial review of the findings and decisions of the Secretary. The court rejects the claim that no substantial federal question is involved and for

---

3. Even if the "favored" class, i. e. those who take benefits other than by § 216(h) (3), does not exhaust the maximum family allowance, plaintiff is not assured of sharing equally with members of the favored class. While equal shares are possible, § 203(a) only guarantees the plaintiff a residual amount equal to the difference between the maximum family allowance and the sum of benefits to which persons who take under sections other than § 216(h) (3) are entitled. The practical effect, of course, in many cases is that the residual amount is quite small even if it is not zero as in the case at bar. See e. g., Garner v. Richardson, 333 F.Supp. 1191, 1194 n. 2 (N.D.Cal.1971), where after initially receiving no benefits at all, three members of the disfavored class received monthly benefits of $3.20 while three members of the favored class received $283.20 out of a family maximum of $286.40.

4. This particular case indicates the unusually arbitrary and unfair results

which can occur because of the effect of § 203(a) which only affects illegitimate persons qualified under § 216(h) (3). Under the Maryland intestacy laws, an illegitimate child can inherit from either his mother or father providing there has been the proper acknowledgment or judicial determination. MD.CODE ANN. art. 93, § 1–205, 1–208 (1969). Thus Barbara Griffin would have qualified under § 216(h) (2) of the Social Security Act rather than § 216(h) (3), but for the fact that the Maryland law referred to above was not effective until January 1, 1970. MD.CODE ANN. art. 93, § 12–102 (a) (1969). Since Barbara Griffin's father died on August 21, 1969, a mere four and one-half months before the effective date of the Maryland law, she is completely excluded from benefits as a beneficiary under § 216(h) (3), rather than sharing proportionately with the other recipients as a beneficiary under § 216(h) (2).

the reasons which will more fully appear later in this opinion concludes as a matter of law that from the nature of the claim and the relief to which the court finds the plaintiff to be entitled that a substantial federal question is indeed involved. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

The Secretary argues that since judicial review of his decision is available under § 405(g) of the Act such an action is made the exclusive means of reviewing his final decision by the provisions of § 405(h) which states:

> (h) The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

The Secretary buttresses his contention by claiming that the ultimate relief sought by the plaintiff in this case is money damages in the form of allowance of benefits to the plaintiff and that if she is entitled in law to such an allowance this result could be achieved by a review of the Secretary's decision.

The court does not find this argument persuasive. Plaintiff is seeking injunctive, declaratory and mandamus-like relief. Additionally plaintiff has sought to make this a class action, requesting retroactive as well as prospective relief. Such relief may not be fully afforded under the provisions of §§ 405(g) and (h). With these considerations in mind, it becomes clear that plaintiff here is not merely seeking relief which is substantially equivalent to

an award of money damages. Finally the explicit language of 28 U.S.C. § 2282 requires three judges to enjoin the enforcement of any congressional act on the ground that it is unconstitutional which is precisely the relief sought by plaintiff and her class. For these reasons, the court concludes that the Secretary's motion to dissolve the three-judge court must be denied.

Plaintiff has moved for certification of this action as a class action pursuant to Rules 23(a) and (b) (2), Fed.R.Civ.P. which provide:

> (a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> . . .

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

The class to be certified in this case shall consist of all illegitimate persons qualified for benefits under § 216(h)(3) of the Act who are being or have been denied benefits equal to those benefits granted other beneficiaries of an insured individual because of the last sentence of § 203(a).[5] While the Secre-

---

5. This definition of the class is somewhat different from that which the plaintiff sought to have certified. Plaintiff's requested class consisted of those illegiti-

mate persons who qualify for benefits under § 216(h) (3) of the Act but "are being or have been denied these benefits pursuant to § 203(a) of the Act because

tary's records may leave some doubt as to the number of persons similarly situated to plaintiff, the court has no doubt that the members of such class are so numerous as to make their joinder impracticable. Clearly there are questions of law or fact common to all members of the class. The Secretary relies principally on his contentions that plaintiff's claim is not typical and that as a representative party she will not fairly and adequately protect the interests of the class. He points to the fact that plaintiff has distinguished her case from those upholding the constitutionality of § 203(a), *e.g.*, Parker v. Secretary of H.E.W., 453 F.2d 850 (5th Cir. 1972), on the ground that the beneficiaries in this case are stepchildren with no close connection to the deceased wage earner who had left their mother a few weeks after the marriage. While the plaintiff here is obviously willing to make such a distinction, she does so only if the court for some reason finds that because of these facts she is not typical of the larger class which will be certified rather than the more limited class of plaintiffs who are discriminated against in favor of beneficiaries consisting solely of stepchildren. The basic thrust of plaintiff's argument is that discrimination against illegitimate children under the statutory scheme is violative of the due process clause of the Fifth Amendment; and this is true regardless of whether the discrimination is in favor of legitimate children, stepchildren, adopted children, or for that matter other illegitimate children who may receive benefits pursuant to §§ 216(h)(2)(A) or (B). While it may be that the facts of this case show that the statutory scheme falls with particular harshness on Barbara Griffin, the court is persuaded and accordingly finds that her claims are typical and that she can fairly and, adequately protect the interests of a class of illegitimate children eligible to receive but otherwise denied benefits equal to those of other eligible beneficiaries under the Act because of the effect of § 203(a).

The court sees no reason why the class should be further limited to those cases where the "favored" class consists of stepchildren whose receipt of benefits deprives an illegitimate child of equal benefits. Such a limitation would not clarify the issues in any significant way but rather it offers some element of unfairness or confusion. For example, such a limitation would not cover situations where the "favored" class consisted of some combination of legitimate children, adopted children, stepchildren, or illegitimate children authorized under other sections of the Act to receive benefits. No reason appears why persons in plaintiff's class should have their legal rights altered depending on the various permutations and combinations of eligible beneficiaries under the existing statutory scheme. The formation of a class is appropriate. Doe v. Shapiro, 302 F. Supp. 761, 762 n. 3 (D.Conn.1969) (three-judge court), *appeal dismissed* 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970); Grubb v. Sterrett, 315 F. Supp. 990, 992 (N.D.Ind.) (three-judge

other eligible beneficiaries are receiving the maximum family benefit amount." Clearly the definition of the class which this court is certifying enlarges the class since it includes all persons who receive anything less than benefits equal to those of the other eligible beneficiaries and not just those who receive no benefits at all. There is nothing in the legal theory of this case or the practical application of the law which requires limiting the class as plaintiff has requested. If anything the converse is true. The legal argument in this case is based on the validity of the discrimination between groups and anything less than equal treatment amounts to discrimination in the context of this case. As noted in note 3, *supra*, § 203(a) may give persons such as the plaintiff something more than no benefits at all while still not providing equal treatment. Garner v. Richardson, 333 F. Supp. 1191 (N.D.Cal.1971). It is highly unlikely that the practical effects of § 203 (a) are significantly different for the three persons who shared $3.20 per month in *Garner* than its effects on the plaintiff in this case who receives nothing at all.

court), aff'd 400 U.S. 922, 91 S.Ct. 187, 27 L.Ed.2d 182 (1970).

■■■■ In Davis v. Richardson, 342 F.Supp. 588 (D.Conn., filed May 8, 1972), a three-judge court held unconstitutional the same statute in question here. The Secretary urges this court to stay its hand pending further disposition in *Davis*. Factually, *Davis* is similar except that it is not a class action. Further delay in determining the constitutionality of the law under which plaintiff has been denied benefits would serve no useful purpose. A deferred recovery of a lump sum amount by this plaintiff would do nothing to alleviate her immediate need, especially in view of the fact that plaintiff here is living on $130 per month from public assistance. While the court has before it no facts demonstrating that the class as a whole suffers from similarly impoverished conditions, common observation teaches that illegitimacy and indigency are often handmaidens. A notice of appeal was filed in *Davis* on June 5, 1972 and if the appeal is pursued, it is apparent that it would not be heard by the Supreme Court before the October term at the earliest. The equities of this case do not favor such a delay. Moreover the effect of granting the Secretary's motion would be analogous to granting a stay pending appeal. As pointed out in Long v. Robinson, 432 F.2d 977, 979 (Winter, J. as single United States Circuit Judge, 4th Cir. 1970), the applicant for such a stay must show "(1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." The defendant here cannot prevail on any of these grounds and his motion to hold in abeyance will be denied.

On the undisputed facts presented by the cross-motions for summary judgment, the court now turns to the merits.

While the Fifth Amendment does not contain an equal protection clause as is found in the Fourteenth Amendment, it is clear that certain notions of equal protection are inherent in the Due Process Clause. As the Supreme Court said in Bolling v. Sharpe, 347 U.S. 497, 74 S. Ct. 693, 98 L.Ed. 884 (1954):

> The Fifth Amendment . . . does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states. But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive. The 'equal protection of the laws' is a more explicit safeguard of prohibited unfairness than 'due process of law,' and, therefore, we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process."

347 U.S. at 499, 74 S.Ct. at 694 (footnote omitted). *See also* Shapiro v. Thompson, 394 U.S. 618, 641–42, 89 S. Ct. 1322, 22 L.Ed.2d 600 (1969).

The first question to be considered is what is the appropriate standard for determining if plaintiffs have been afforded due process under the Fifth Amendment. The cases which followed *Bolling v. Sharpe*, have not clearly delineated the proper test to be used. In Flemming v. Nestor, 363 U.S. 603, 80 S. Ct. 1367, 4 L.Ed.2d 1435 (1960), the Court upheld the validity of a section of the Social Security Act which terminated certain benefits of aliens who were deported. The standard enunciated in that case was that "the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." 363 U.S. at 611, 80 S.Ct. at 1373. More recently in Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), the Court stated that:

> A statutory classification in the area of social welfare is consistent

with the Equal Protection Clause of the Fourteenth Amendment if it is 'rationally based and free from invidious discrimination.' Dandridge v. Williams, 397 U.S. 471, 487 [90 S.Ct. 1153, 1162, 25 L.Ed.2d 491]. While the present case, involving as it does a federal statute, does not directly implicate the Fourteenth Amendment's Equal Protection Clause, a classification which meets the test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment. Cf. Bolling v. Sharpe, 347 U.S. 497, 499 [74 S.Ct. 693, 694, 98 L.Ed. 884].

404 U.S. at 81, 92 S.Ct. at 257. Later in the same opinion it is said that:

If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment.

404 U.S. at 84, 92 S.Ct. at 258.

More recently, however, the Supreme Court in Weber v. Aetna Casualty & Surety Co., 406 S.Ct. 1400, 31 L.Ed.2d 768 (1972) stated that:

The tests to determine the validity of state statutes under the Equal Protection Clause have been variously expressed, but this Court requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose. [citations omitted] . . . Though the latitude given state economic and social regulation is necessarily broad, when state statutory classifications approach sensitive and fundamental personal rights, this Court exercises a stricter scrutiny, Brown v. Board of Education, 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873] (1954); Harper v. Virginia [State] Board of Elections, 383 U.S. 663 [86 S.Ct. 1079, 16 L.Ed.2d 169] (1966). The essential inquiry in all the foregoing cases is, however, inevitably a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?

406 U.S. at 172–73, 92 S.Ct. at 1405.[6]

The Court has also required that the state show a *"compelling* governmental interest" in justification of its classifications at least where fundamental constitutional rights are involved. Shapiro v. Thompson, 394 U.S. at 634, 89 S.Ct. 1322.

An analysis of these cases does not clarify the precise standard to be used in the case at bar. However, four recent Supreme Court cases dealing with the classification of illegitimates by state legislatures lead to the conclusion that the statutory scheme in question here is invalid. This is true whether the standard is that the scheme must be "rationally based and free from invidious discrimination," or that it is a "patently arbitrary classification utterly lacking in rational justification," or that there is no "compelling state interest" to justify the classification.

In Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), the Court found unconstitutional a Louisiana statute which prohibited illegitimate children from suing for the wrongful death of their mother. The Court felt the rights asserted there involved "the intimate, familial relationship between a child and his own mother." 391 U.S. at 71, 88 S.Ct. at 1511. While acknowledging that a State has broad powers in making classifications, the Court noted that it has "been extremely sensitive when it comes to basic civil rights [citations omitted] and [has] not hesitated to strike down an invidious classification even though it had history and tradition on its side." *Id.*

In Glona v. American Guarantee & Liability Insurance Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), a companion case to *Levy*, the Court inval-

---

6. *Cf.* Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

idated the Louisiana wrongful death statute insofar as it prohibited recovery by a mother for the death of her illegitimate son. The Court presumably used the "rational basis" test. 391 U.S. at 75, 88 S.Ct. 1515.

In Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), the Court found that the Fourteenth Amendment did not prohibit a State from denying a publicly acknowledged illegitimate child from taking under that State's intestacy laws.

The Supreme Court's most recent pronouncements on the rights of illegitimate children are found in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 400 (1972). The Court found that there was a denial of equal protection where Louisiana prohibited unacknowledged, illegitimate children from recovering on an equal basis with dependent legitimate and acknowledged illegitimate children under that State's workmen's compensation statute.

Analysis of these cases shows that the various justifications suggested by the defendant for the discriminatory treatment of illegitimates in the statutory scheme under consideration here have no rational basis and consequently violate plaintiffs' rights to due process under the Fifth Amendment.

Particularly persuasive to this court is the Supreme Court's decision in Weber. Not only is Weber the Court's most recent decision in this area but it involves a statutory scheme which is quite similar to that in the Social Security Act. In Weber, the State workmen's compensation scheme allowed unacknowledged illegitimate children to recover only if there were not enough other surviving dependents (including parents of the deceased as well as acknowledged illegitimate children) to exhaust the maximum allowable benefits. There are, of course, some differences between Weber and the case at bar. In Weber,

the plaintiffs were unacknowledged illegitimates. In the case at bar, Barbara Griffin and at least some members of her class would have been acknowledged either in writing by the insured or determined by decree of court to be the insured's child or there would have been a court order requiring payment of support because the applicant was the insured's child. § 216(h) (3) (C) (i).[7] Certainly their case is more persuasive than the plaintiffs in *Weber*. As to those who qualify by showing the paternity of the insured to the satisfaction of the Secretary of Health, Education and Welfare, their position is at least as favorable as that of the plaintiffs in *Weber*. Also *Weber* involved a state statutory scheme and consequently involved the Fourteenth rather than the Fifth Amendment. However, in view of the language used by the Court and the fact that there was but one dissent, it seems highly unlikely that the Court would have reached a different result if the Due Process Clause of the Fifth Amendment had been involved.

The defendant in *Weber* suggested a number of reasons for the classifications involved, some of which have been raised by the defendant here. Defendant here suggests that the provision in question is justified as tending to preserve the wage earner's family unit and that the priority in payments to the wage earner's family unit fosters the integrity and stability of that unit. Similarly in *Weber*, it was suggested that the statutory classifications serve the State's interest in protecting legitimate family relationships. Assuming that Congress has a legitimate interest in protecting or promoting by the Social Security Act what are concededly each state's own notions of the proper family unit, this argument is still not persuasive. To paraphrase what the Supreme Court has said in *Glona*, this court can see no possible rational basis for assuming that if an illegitimate child is allowed to re-

---

7. Citations to subsections of § 216(h) (3) (C) incorporate by reference the anal-   ogous provisions of subsections 216(h) (3) (A) and (B). See n. 2 *supra*.

cover Social Security benefits the cause of illegitimacy will be served. *See* 391 U.S. at 75, 88 S.Ct. 1515. Further, as was said in *Weber*, "[n]or can it be thought here that persons will shun illicit relations because the offspring may not one day reap the benefits of "the Social Security Act. 406 U.S. at 173, 92 S.Ct. at 1405. If Congress intended to discourage illegitimacy by limiting benefits under the Social Security Act, then it should have done so as to all illegitimates, i. e., those under §§ 216(h) (2) (A) and (B) and not just those under § 216(h) (3). The fact that the only illegitimates who are excluded are those under § 216(h) (3) shows that Congress acted arbitrarily and in no way furthered any suggested Congressional purpose to discourage illegitimacy.

Defendant suggests further that a state's inheritance laws are the best test of the proper family unit and that in the majority of states, such laws are based on sociological rather than biological ties. Whatever the merits of this assertion, it ignores the fact that Congress has already determined the proper beneficiaries under the Act. Prior to 1960, the only illegitimate children who could receive benefits were those who now take under § 216(h) (2) (A), i. e., those who could take under the intestacy laws of their state. In 1960, § 216(h) (2) (B) was added to allow persons to receive benefits if their parents "went through a marriage ceremony resulting in a purported marriage . . . which, but for [certain] legal impediment[s] . . . would have been a valid marriage." Finally in 1965, Congress added the present § 216(h) (3) which expanded the definition of eligible illegitimate children. In 1968, that part of § 203(a) (3) being challenged here, which discriminates against those qualified by § 216(h) (3) was added. This brief statutory history indicates clearly that Congress was not convinced that the state's intestacy laws were the sole or the only proper basis for determining eligibility. If anything, the statute shows that Congress found the various state intestacy laws too restrictive.

Defendant suggests that Congress has limited funds to spend and that it may properly accord different priorities to different groups. Defendant emphasizes that illegitimate children are not precluded from benefits, only that others receive priority in payment. Again it should be noted that this only applies to illegitimates in § 216(h) (3) and not in other sections. Further when the euphemisms about "lower priorities" and "not being precluded from benefits" are stripped away, the fact remains that plaintiff and many members of her class are receiving nothing while the remaining members of the class are receiving less than their proportionate share of benefits than if they had been permitted to share equally with those persons in § 216(h)(2).

Defendant suggests that this priority gives benefits to those who most likely would have been supported by the insured. This argument has no relevance to Barbara Griffin who was being supported by her father until his death. More importantly, by definition the insured fathers of all class members in §§ 216(h) (3) (C) (i) (III) and (C) (ii) or the analogous provisions of §§ 216(h) (3) (A) or (B), were either under court order to contribute to the support of these children or were in fact living with or contributing to the support of these children. It is not unreasonable to assume that those insured who were living with their children were likely to have been supporting them. Thus, to limit or entirely exclude from benefits those children who qualify under these sections is to ignore the plain language of the statute. While not entirely clear, it seems fair to assume that those children as defined in §§ 216(h) (3) (C) (i) (I) and (II) or the analogous provisions of §§ 216(h) (3) (A) or (B), were also quite likely to have been supported by their fathers, who would have been the subjects of a written acknowledgment or court decree. Such a decree or acknowledgment would not likely have

been made or sought in the absence of the possibility of support for the child. At any rate, the blanket discrimination by § 203(a)(3) of all persons defined in § 216(h)(3) seems incompatible with the alleged purpose of giving priority to those who were most likely to have been supported by their fathers.

The defendant has also attempted to justify the challenged statutory scheme on the ground that the exclusion of illegitimates removes the possibility of spurious claims. The wording of the statute itself shows this contention is without merit. As noted earlier, each member of the class must have qualified for benefits under § 216(h)(3). In order to do so, there must have been either an acknowledgment, a court decree, proof satisfactory to the Secretary of H.E.W., or a court order that the insured contribute to the child's support because the child was the insured wage earner's son or daughter. Thus the question of paternity has been decided before § 203(a) comes into play. Again any concern with problems of proof does not explain why the discrimination under § 203(a) does not apply to illegitimates who take under § 216(h)(2).

The defendant expresses concern about the budgetary consequences of allowing plaintiff and her class to receive benefits equal to those of other beneficiaries under the Act. Defendant's concern with a limited budget is, of course, a valid governmental interest. However, the plain operation of the statute makes this concern unwarranted in this case. The statute merely allocates a fixed sum of money and if persons in plaintiff's class were to receive benefits, the total payments by the government would not increase. Denying benefits to plaintiff's class, therefore, would effect no economy.

Defendant has also suggested that since the pre-1965 statutory scheme was valid, the 1965 and 1968 Amendments cannot be any less valid since they increase the number of beneficiaries and make the statutory scheme less restrictive than the pre-1965 scheme. This is tantamount to saying that once the government grants certain benefits which it previously has not granted, it may then arbitrarily limit or deny these benefits without reference to the Constitution. To begin with, every case cited by the defendant to show the validity of the pre-1965 scheme, e. g., Robles v. Folsom, 239 F.2d 562 (2d Cir. 1956), cert. denied 353 U.S. 960, 77 S.Ct. 869, 1 L.Ed.2d 911 (1957), was decided prior to Levy, Glona and Weber. Prior to 1968, the last sentence of § 203(a) read: "Whenever a reduction is made under this subsection, each benefit, except the old-age or disability insurance benefit, shall be proportionately decreased." Thus, between 1965 and 1968 Congress did treat all eligible beneficiaries equally. As this opinion indicates, no rational reason has been shown for the 1968 Amendment. The court may assume that despite Levy, Glona, and Weber, Congress was not required to add § 216(h)(3) to the Social Security Act. However, once the group of beneficiaries has been created, it is a violation of due process to discriminate arbitrarily among members of that group.[8] See also Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Kramer v. Union Free School District No. 15, 395 U.S. 621,

---

8. In Garner v. Richardson, 333 F.Supp. 1191 (N.D.Cal.1971), the court felt that since Congress could have limited benefits to legitimate children, it could properly attach conditions to the payment of benefits to illegitimate children. The case, decided before Weber and relying in part on Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971) ignored the fact that illegitimates may take under § 216(h)(2). Moreover, as was said in Jordan v. Finch, Civil No. 32–69 (D.N.J., filed Jan. 27, 1970):

Biological, sociological and economic questions aside, the Law may not carefully define a legal class, entitle them to benefits and then state that part of that class, under certain circumstances unrelated to the purposes of the statute, merely because of birth, is inferior to the remainder of the class."

Unreported opinion at 8.

628–629, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

■ Finally this court observes as did the Supreme Court in *Weber*:

> Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where —as in this case—the classification is justified by no legitimate state interest, compelling or otherwise.

406 U.S. at 175, 92 S.Ct. at 1407 (footnote omitted). For the foregoing reasons, this court declares the challenged portion of § 203(a) of the Social Security Act to be unconstitutional because it violates the due process guarantee set forth in the Fifth Amendment of the United States Constitution. Plaintiff and members of the class formed are entitled to the relief sought.

The defendant's motions to dissolve the three-judge court, to hold the case in abeyance, opposing certification of this action as a class action, and for summary judgment are hereby denied. The plaintiff's motion for certification of this action as a class action is hereby granted with the class formed as provided in this opinion and plaintiff's motion for summary judgment is hereby granted. Counsel with notice will present an order for judgment in accordance with this opinion declaring the challenged portion of § 203(a) of the Social Security Act to be unconstitutional insofar as it discriminates against those persons who take child's insurance benefits solely by reason of § 216(h)(3) of the Social Security Act, enjoining the defendant from the enforcement thereof and directing the defendant to make payments to the plaintiff and members of her class for such periods that each such person would have been qualified to receive payments but for the provisions of § 203(a) herein held unconstitutional and to take reasonable measures to determine those persons to whom such benefits would have been allowed but for the provisions of § 203(a) herein declared unconstitutional and to give notice to such persons of their possible eligibility to receive benefits as a result of this decision.