**Bradford Malcolm SEVERANCE**

**v.**

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 1659–72.**

United States District Court,
District of Columbia.

July 2, 1973.

Edward E. Schwab, Neighborhood Legal Services Program, Washington, D. C., for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty., Arnold T. Aikens, Asst. U. S. Atty., Harland F. Leathers and Kenneth A. Rutherford, Attys., Dept. of Justice, for defendant.

Before WILKEY, Circuit Judge, and ROBINSON and FLANNERY, District Judges.

AUBREY E. ROBINSON, Jr., District Judge.

## OPINION

This is an action for declaratory and injunctive relief challenging the constitutionality of Section 216(h)(3)(A) of the Social Security Act, 42 U.S.C. § 416(h)(3)(A), for alleged discrimination against illegitimate children. Plaintiffs also challenge on the same grounds Section 316 of Title 19, District of Columbia Code, as incorporated by reference in Section 216(h)(2)(A) of the Social Security Act, 42 U.S.C. § 416(h)(2)(A). Jurisdiction is premised on 28 U.S.C. §§ 1331, 1343(4) and 1361.[1] A three-judge Court was convened pursuant to 28 U.S.C. § 2282. Defendant's Motion to Dismiss and Motion to Dissolve the three-judge Court were previously denied. Presently before the Court are Plaintiffs' Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

Plaintiff has also moved for the substitution of Caspar Weinberger as Defendant, for Elliot L. Richardson, and for certification of the case as a class action. Jacqueline D. Severance, John T. Severance, and Lance O. Severance, by their next friend, Malcolm B. Severance, have moved to intervene as Plaintiffs in this action. The motions for substitution and intervention will be

---

1. Jurisdiction is not premised on section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), the provision for judicial review of administrative decisions on eligibility for Social Security benefits. This was a focus of Defendant's Motion to Dismiss, which was denied without opinion on February 9, 1973. See Griffin v. Richardson, 346 F.Supp. 1226, 1230 (D.Md.1972) aff'd 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972), Morris v. Richardson, 346 F.Supp. 494, 495 (N.D.Ga.1972), Gainville v. Richardson, 319 F.Supp. 16, 18 (D.Mass.1972). Compare Bartley v. Finch, 311 F.Supp. 876 (E.D.Ky.1970), aff'd 404 U.S. 980, 92 S.Ct. 442, 30 L.Ed.2d 364 (1971).

granted. The motion to certify a class action will be denied.

## I

Malcolm B. Severance, the wage earner on whose account applications for Social Security benefits were made in this case, was born on April 3, 1898. In 1921 Malcolm Severance married Anna Severance, with whom he lived until 1946, when they separated. There is no indication that this marriage was ever terminated by death or divorce. Plaintiff Bradford Severance was born to Malcolm and Delores Tyson (Severance) on November 7, 1965. His father and mother were not married, there being the outstanding bar of Malcolm Severance's prior undissolved marriage. Malcolm Severance began dating Delores Tyson in late 1962. In 1963, she became pregnant by him and on January 22, 1964, gave birth to their first child, Jacqueline. Mr. Severance had reached age 65 in April 1963. Soon after Jacqueline's birth, Delores Tyson moved in with Malcolm Severance. She began using the name Severance and became known in the community as the wife of Malcolm B. Severance. Mr. Severance and Miss Tyson lived together from February 1964 until June 1972. During that time they had three additional children: Bradford M. Severance, the original Plaintiff herein, John T. Severance, born September 27, 1967; and Lance O. Severance, born May 19, 1969.

The four children have lived with Malcolm B. Severance since birth. On the present record it is not contested that he has acknowledged them to be his children, both orally and in writing, and has provided full support to them since birth.

Malcolm Severance reached age 65 on April 3, 1963. He remained employed for five years thereafter,[2] however, and began receiving monthly social security retirement payments only in November 1968. When applications for children's benefits were made, they were denied because none of the Severance children meets the definition of "child" contained in Section 216(h)(2–3) of the Social Security Act, 42 U.S.C. § 416(h)(2–3).[2-A]

Section 216(h)(2)(A) of the Social Security Act provides that for the purpose of determining eligibility for children's benefits under the Act, the Secretary may look to local law on the devolution of personal property of an intestate decedent. Those eligible to take such property as children are to be deemed eligible for children's benefits under the Social Security Act. In the District of Columbia the applicable local law is found at 19 D.C.Code § 316, which extends the intestate rights of an illegitimate child to take from the estate of his mother. There is no such provision extending rights to take from the estate of his father and therefore the common law bar to such taking controls.[3] Section 216(h)(2) was the original provision in the Social Security Act for children's benefits[4] and for many years was the only avenue for such eligibility.

In 1965 Congress amended the Act by adding Subsection (h)(3)(A–C).[5] These provisions were intended to broaden the class of eligible children and to provide

---

2. Malcolm Severance was employed for many years as an airborne electronics production specialist for the Department of Navy.

2–A. Children's benefits are established by 42 U.S.C. § 402(d) and are available on terms and conditions specified therein to those who qualify as "child" is defined in 42 U.S.C. § 416(e) and (h)(2) and (h)(3).

3. Watts v. Veneman, 476 F.2d 529, at 531, n. 4 (D.C.Cir. 1973).

4. August 28, 1950, c. 809, Title I, §§ 101, 104, Public Law 81–734, 64 Stat. 477, 483, 511. Subsection (h)(2)(B), added in 1960, Public Law 86–778, 74 Stat. 950. September 13, 1960, provides eligibility for children whose parents participated in a ceremonial marriage later deemed invalid due to a legal impediment.

5. Public Law 89–97, 79 Stat. 366, July 30, 1965.

an alternative to reliance solely on the varying provisions of state intestacy laws.[6] Subsection (h)(3)(A) provides for claims of children of wage-earners receiving old-age benefits. Subsections (h)(3)(B) and (C) provide for children claiming under disabled and deceased wage-earners, respectively.[7]

Subsection (h)(3)(A) [8] provides that a "son or daughter" not otherwise eligible as a "child" for benefits on the account of a wage-earner receiving old-age benefits shall nevertheless be deemed to be eligible for benefits if the wage-earner—

(i) . . .

"(I) has acknowledged in writing, that the applicant is his son or daughter

(II) has been decreed by a Court to be the father of the applicant, or

(III) has been ordered by a Court to contribute to the suppport of the applicant because the applicant is his son or daughter, and such acknowledgement, court decree, or court order was made not less than one year before such insured individual became entitled to old-age in-

surance benefits or attained age 65, which ever is earlier, or

(ii) such insured individual is shown by evidence satisfactory · to the Secretary to be the father of the applicant and was living with or contributing to the support of the applicant at the time such insured individual became entitled to benefits or attained age 65, whichever first occurred.

The Severance children could not have been acknowledged or their paternity established before Malcolm Severance reached age 65 because they were not in being at that time. Likewise, they obviously were not then living with nor being supported by their father. Thus it is impossible for them to qualify for children's benefits under the Social Security Act. No such requirements are imposed on legitimate children born after their father becomes 65. For this reason, Plaintiffs contend that the conditions of § 216(h)(3)(A) discriminate against illegitimate children. It is not alleged that the statute discriminates against all illegitimate children, but only against those illegitimates whose date of birth makes it impossible for the statu-

---

6. See Senate· Report No. 404, 89th Cong. 1st Sess. at 110 (1965).

7. The substance of Subsections B and C, 42 U.S.C. § 416(h)(3)(B & C) is virtually identical to A, except that Subsections B and C do not require that the Court order or acknowledgment be made not less than one year before entitlement to benefits, but anytime prior to the date of disability or death. See Note 24, infra.

8. 42 U.S.C. § 416(h)(3):
   An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:
   (A) in the case of an insured individual entitled to old-age insurance benefits (who was not, in the month preceding such entitlement, entitled to disability insurance benefits)—

(i) such insured individual—
(I) has acknowledged in writing that the applicant is his son or daughter
(II) has been decreed by a court to be father of the applicant, or
(III) has been ordered by a court to contribute to the support of the applicant because the applicant is his son or daughter,
and such acknowledgment, court decree, or court order was made not less than one year before such insured individual became entitled to old-age insurance benefits or attained age 65, whichever is earlier; or
(ii) such insured individual is shown by evidence satisfactory to the Secretary to be the father of the applicant and was living with or contributing to the support of the applicant at the time such insured individual became entitled to benefits or attained age 65, whichever first occurred.

tory conditions to be fulfilled and who do not otherwise qualify for benefits.[9] The conditions of Subsection (h)(3)(A) are not challenged here as they relate to those illegitimates who could meet the conditions but simply fail to do so.

## II

■ The constitutionality of 19 D.C. Code § 316 was upheld in Watts v. Veneman, 476 F.2d 529 (D.C.Cir. 1973) on the authority of Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971). This Court finds no reason to question the *Watts* decision. Accordingly, Defendant's Motion for Judgment on the Pleadings will be granted insofar as this case involves a challenge to 19 D.C. Code § 316 as incorporated in 42 U.S.C. § 216(h)(2)(A).[10]

## III

■ Plaintiffs here argue strenuously that the standard of review which should be applied to Section 216(h)(3)(A) in this case requires a "compelling state interest" to justify the disparate treatment of illegitimate children present here. It is not contested that Social Security benefits are not such "fundamental rights"[11] as require strict scrutiny under the equal protection standards embodied in the due process clause of the Fifth Amendment.[12] Rather, Plaintiffs argue that classifications based on illegitimacy are "inherently suspect" and that it is for this reason that strict constitutional scrutiny is required.[13] Plaintiffs argument is not without some merit.[14] Yet the Supreme

---

9. There are thus three classes of illegitimate children, under the Social Security Act: (A) those who qualify under § 216(h)(2); (B) those who can qualify by complying with the conditions of § 216(h)(3) (which may be further subdivided into two groups—those who take steps to meet the conditions and those who do not); and (C) those who cannot qualify under § 216(h)(3) because of their date of birth.

10. It should be noted that to the extent that Watts involved Section 216(h)(3), there was a *failure* to comply with Section 216(h)(3)(C) rather then *impossibility* of compliance. The Watts opinion expressly noted that the validity of the § 216(h)(3) requirements was not there challenged. 476 F.2d 529 at 531.

11. Richardson v. Belcher, 404 U.S. 78, 80–81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Dandridge v. Williams, 397 U.S. 471, 483–487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Fleming v. Nestor, 363 U.S. 603, 610–611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). Such fundamental rights include, for example, freedom to travel, Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), freedom to procreate, Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1941), freedom to choose one's place of residence, Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 1435 (1944), freedom of association, Bates v. Little Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960), and, of course, freedom of religion, Sherbert v. Verner. 374 U.S. 398,

406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

12. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

13. Such "suspect classifications" include those based on race, McLaughlin v. Florida, 379 U.S. 184, 191–192, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), Loving v. Virginia, 388 U.S. 1, 9, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), ancestry or nationality, Hirabayshi v. United States, 320 U.S. 81, 100, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943), or alienage, Graham v. Richardson, 403 U.S. 365, 371–372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), In re Griffiths, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910, 1973.

14. Two Courts which have recently viewed similar litigation have applied the "rational basis" test without extended discussion, citing Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231. Beaty v. Weinberger, 478 F.2d 300 at 305 (5th Cir. 1973); Jimenez v. Richardson, 353 F.Supp. 1356 at 1360–1361 (N.D.Ill.1973). Yet there is some difference between a pure "rational basis" test and the weighing of interests required in Weber v. Aetna Casualty & Surety Company, 406 U.S. 164, 172–173, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), which involved a classification based on illegitimacy. (See Note 15, infra). Compare Marshall, J. dissenting in Richardson v. Belcher, 404 U.S. 78, at 90–91, 92 S.Ct. 254, 30 L.Ed.2d 231. Two other recent cases have noted some problem on this point but found the rational basis

Court has not expressly denominated illegitimacy as an inherently suspect basis for statutory classifications,[15] despite repeated opportunity to do so.[16] Finding that the traditional "rational basis" test provides an adequate standard for decision here we do not find it necessary to determine whether the stricter "compelling state interest" test should be applied when a classification based on illegitimacy is found to have a "rational basis."

### IV

Defendants first contend that the statute here under challenge does not discriminate against children because they are illegitimate. The basis for this contention is not clearly spelled out, but apparently rests in the fact that some illegitimate children can qualify for benefits under § 216(h)(2), while many other illegitimates can qualify by meeting the conditions of (h)(3)(A). Nevertheless, all legitimate children similarly situated to the present Plaintiffs i. e. born after their father reaches age 65,[17] can receive benefits. Thus the only reason these Plaintiffs are excluded from eligibility for benefits is their illegitimacy.

■ Defendants contend that in enacting § 216(h)(3)(A) Congress was ex-

standard adequate for decision. Miller v. Laird, 349 F.Supp. 1034, 1039–1043 (D.D.C.1972), Griffin v. Richardson, 346 F.Supp. 1232–1234 (D.Md.1972), aff'd 409 U.S. 1069, 93 S.Ct. 689, 34 L. Ed.2d 660 (1972).

While Weber involved a state statute the Court still expressly required "stricter scrutiny" than a mere rational basis. 406 U.S. at 172, 92 S.Ct. 1400. Further, Richardson v. Belcher required not only that Federal social welfare classifications be rationally based, but also that they be "free from invidious discrimination." 404 U.S. at 81, 92 S.Ct. 254. Even where there is a rational basis for a statutory classification, measurement of the competing interests involved might still show a resulting discrimination properly characterized as invidious. It is to be hoped that the Supreme Court will clarify what has become an increasingly ambiguous standard of review applicable to cases such as that now before us.

15. The most specific Supreme Court language in point reviewing a classification based on illegitimacy came in Weber v. Aetna Casualty and Surety Company, 406 U.S. 164, 172–173, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768 (1972):

this Court requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose. . . . though the latitude given state economic and social regulation is necessarily broad, when state statutory classifications approach sensitive and fundamental personal rights, this Court requires a stricter scrutiny. . . . the essential inquiry in all the foregoing cases, is however, inevitably a dual one: what legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger? (citations omitted).

Later, in Gomez v. Perez, 409 U.S. 535, at 538, 93 S.Ct. 872, at 875, 35 L.Ed.2d 56, 1973, summarizing Weber and Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) the Court said:

Under these decisions, a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally.

A strong argument can be made that this sentence equates invidious discrimination and denial of benefits to illegitimates because of their illegitimacy. If so, any statutory classification based solely on illegitimacy would seem vulnerable.

16. New Jersey Welfare Rights Organization v. Cahill, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543, 1973; Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L. Ed.2d 56, 1973; Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed. 2d 551 (1972); Labine v. Vincent, 401 U. S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Glona v. American Guaranty & Liability Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968); Davis v. Richardson, 409 U.S. 10, 93 S.Ct. 678, 34 L.Ed. 2d 659, 1972, affirming 342 F.Supp. 588 (D.Conn.1972); Griffin v. Richardson, 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed. 2d 660, Dec. 18, 1972, affirming 346 F. Supp. 1226 (D.Md.1972).

17. More precisely, § 216(h)(3)(A) bars illegitimates born anytime after *one year before* their father reaches age 65 or becomes otherwise eligible for retirement benefits. See Note 8, supra.

tending social welfare benefits, and that it had no obligation to extend those benefits to the maximum limits. There is no dispute on this point. Jefferson v. Hackney, 406 U.S. 535, 546–547, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).[18] Yet in extending benefits Congress is not free to establish invidious classifications among potential beneficiaries. Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600; Jefferson v. Hackney, 406 U.S. 535, 546–547, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

Defendants dispute the charge of invidious discrimination against illegitimates. The statutory distinction, they say, has several rational bases. The first such base proffered is the argument that children's Social Security benefits are intended to provide support lost by a wage-earner's retirement, and that children born after retirement are thus not entitled to benefits. The problem with this argument is that *legitimate* children born after retirement *are* entitled to benefits. No bar is erected as to them.[19] This argument, thus, does not provide a basis for the statute as written but only re-emphasizes the disparate treatment of legitimate and illegitimate children.

■ The second allegedly rational basis proffered by the Defendants is the argument that, regardless of the time of birth or age of the parents, Congress is

justified in presuming that legitimate children are more likely to be dependent than illegitimate children and therefore justified in imposing conditions of proof on illegitimates claiming benefits. Again, the Court has no difficulty with this proposition,[20] but Defendant's conclusion does not follow from it. The premise would surely justify the imposition of appropriate conditions requiring proof of dependency and, of course, paternity. But it cannot be said to justify the total exclusion of a class from eligibility by the erection of impossible conditions. Such a total exclusion, *without regard to the factual validity of individual claims*, simply is not a reasonable means of guarding against fraudulent claims.[21]

Defendants contend at length that problems of proof are sufficient justification for such total exclusions. The short answer to this is that the Supreme Court has repeatedly held otherwise:

> We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination.

Gomez v. Perez, 409 U.S. 535, at 538, 93 S.Ct. 872, at 875, 35 L.Ed.2d 56, 1973.[22]

In so deciding we align ourselves with the decision of the Fifth Circuit in Bea-

---

18. Cf. Dandridge v. Williams, 397 U.S. 471, 486–487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), Lindsley v. National Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

19. In theory, a demonstration of dependency is required of all, but statutory presumption of dependency is provided for legitimate children, 42 U.S.C. § 402 (a)(3). The presumption is not available to illegitimates attempting to qualify under § 216(h)(3).

20. Watts v. Veneman, 476 F.2d 529, at 533 (D.C.Cir. 1973):

> The entire thrust of the Social Security laws relevant to dependents is to provide benefits to those who were most likely to have relied upon the deceased for their support. . . .

Congress in enacting the Social Security laws made various judgments about the probability that children are dependent.

21. U. S. Department of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 175, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Gomez v. Perez, 409 U.S. 535, at 537–538, 93 S.Ct. 872, at 874–875, 35 L.Ed.2d 56 (1973); Carrington v. Rash, 380 U.S. 89, 92–97, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965).

22. Cf. Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 174–175, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), Stanley v. Illinois, 405 U.S. 645, 656–657, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965).

ty v. Weinberger, 478 F.2d 300 [23] (5th Cir. 1973), and the views of Judge Fairchild, dissenting in Jimenez v. Richardson, 353 F.Supp. 1356 (N.D.Ill.1973).[24]

■■ Accordingly, Plaintiffs' Motion for Summary Judgment will be granted as to the unconstitutionality of § 216(h)(3)(A) as applied to after-born illegitimates. Defendant will be enjoined from applying the time limitation contained therein in such a way as to erect an absolute bar to eligibility for such illegitimate children born after the statutory deadline for establishing paternity and support. Plaintiff's applications for benefits will be remanded to the Secretary for reconsideration and processing in light of this decision.

23. Judge Simpson, dissenting in Beaty purported to rely on Watts v. Veneman, 476 F.2d 529 (D.C.Cir.1973). Yet we find no inconsistency between *Watts* and our present decision. See Note 10, supra.

24. Those decisions involved illegitimate children claiming on the account of a disabled wage-earner under § 216(h)(3)(B) rather than a retired wage-earner under § 216(h)(3)(A). Yet the statutory bar of impossibility of compliance for after-born illegitimates because of date of birth prevails in both subsections (and in Subsection (c) as well). The same legal issues, therefore, are presented. See Note 7, supra.