Marjorie L. WARRENBERGER, Individually and as Guardian of Ellen M. Warrenberger, Appellants,

v.

Marion S. FOLSOM, Secretary of Health, Education and Welfare.

No. 11963.

United States Court of Appeals Third Circuit.

Argued Dec. 17, 1956.

Decided Dec. 31, 1956.

---

John P. Campana, Williamsport, Pa., for appellants.

Edwin M. Kosik, Asst. U. S. Atty., Scranton, Pa. (J. Julius Levy, U. S. Atty., Scranton, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and STALEY, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the complainant from a summary judgment in favor of the defendant entered by the District Court for the Middle District of Pennsylvania. The complainant, alleging that she is the widow of Charles Vernon Warrenberger, a deceased wage earner, and the mother of his child Ellen, claimed mother's insurance benefits for herself and child's insurance benefits for the child under sec-

tion 202 of the Social Security Act.[1] The claim was denied by the Bureau of Old-Age and Survivors Insurance and was subsequently disallowed by a referee and by the Appeals Council. The present complaint against the Secretary of Health, Education and Welfare to review this action was then filed in the district court, resulting in the summary judgment here under review. D.C., 140 F. Supp. 610.

The action of the administrative tribunals and the district court was based upon their determination that the complainant was not the widow of Warrenberger and that her daughter was not his child. Whether this determination was erroneous is the sole question presented on this appeal.

The complainant had been previously married to Arthur W. Gallew. This marriage was terminated by divorce on December 22, 1941 at the suit of Gallew and upon a finding that the complainant had been guilty of adultery with Warrenberger with whom she had been living. The daughter Ellen was born on May 7, 1940. On October 27, 1944 the complainant went through a ceremonial marriage with Warrenberger and on January 28, 1954 he died. Gallew, the complainant's former husband, is still living. The complainant and Warrenberger were at all material times domiciled in Pennsylvania and under section 216(h) (1) of the Social Security Act[2] the law of that state is determinative of the question presented.

Section 9 of the Pennsylvania Act of March 13, 1815,[3] provides:

"The husband or wife, who shall have been guilty of the crime of adultery, shall not marry the person with whom the said crime was committed during the life of the former wife or husband; but nothing herein contained shall be construed to extend to or affect or render illegitimate any children born of the body of the wife during coverture."

In re Stull's Estate, 1898, 183 Pa. 625, 39 A. 16, 39 L.R.A. 539, it appeared that the decedent had been divorced in Pennsylvania by his former wife upon the ground of adultery with Ada Widdup. He then went to Maryland and married Ada, his former wife being still living. They returned to Pennsylvania where they lived as man and wife. Upon his death Ada claimed as his widow the right to have letters of administration upon his estate granted to her. The Supreme Court of Pennsylvania held that she was not the decedent's widow because her marriage to him, even though valid in Maryland where it was solemnized, was invalid under section 9 of the Act of 1815 and would not be recognized in Pennsylvania. The court said, 183 Pa. at page 629, 39 A. at page 16:

"By the ninth section it will be perceived there is an absolute prohibition of any subsequent marriage between the guilty person and the paramour during the life of the former wife or husband. It forbids the marriage relation to be contracted in the most general terms. The guilty party 'shall not marry the person with whom the said crime was committed.' A personal incapacity to marry is imposed. The necessary meaning of this language is that they shall not marry at all, in any circumstances, or at any time, or any place, so long as the injured party is living. So far as the purpose and meaning of this statute are concerned, it is of no consequence where such subsequent prohibited marriage takes place. The relation itself is absolutely prohibited, and hence is within the operative words of the statute, without any reference as to where the marriage occurs."

To the same effect is Maurer v. Maurer, 1948, 163 Pa.Super. 264, 60 A.2d 440, in which the construction placed upon section 9 of the Act of 1815 by the

---

1. 42 U.S.C.A. § 402.

2. 42 U.S.C.A. § 416(h) (1).

3. P.L. 150, 6 Sm.L. 289, 48 P.S.Pa. § 169.

Supreme Court in the Stull case was followed and applied by the Superior Court of Pennsylvania.

■ It is clear, therefore, that the purported ceremonial marriage contracted by the complainant with Warrenberger in 1944 was invalid. Indeed the complainant concedes as much but urges that in the course of the ceremonial marriage the parties entered into a consensual marriage which would have been valid under the common law of Pennsylvania and that it was not prohibited by section 9 of the Act of 1815. While it is true that a ceremonial marriage does include consensual elements which would still be recognized in Pennsylvania as creating the status of marriage at common law,[4] it does not follow that the prohibition of section 9 of the Act of 1815 applies to ceremonial marriages alone and does not ban those contracted in common law form. For the sweep of section 9, as the Supreme Court of Pennsylvania so forcefully pointed out in the Stull case, is as broad as language can make it. It imposes a personal incapacity to marry in any circumstances or at any time or in any place so long as the injured party is living. In the Stull and Maurer cases it was applied to render void in Pennsylvania a marriage of Pennsylvania domiciliaries which was valid where it was celebrated, thus analogizing that marriage to a polygamous or incestuous one.[5] Section 9 thus discloses an expression of public policy by the Legislature so strong as to bar any suggestion that the statute was not intended to ban all such marriages but merely those attempted to be contracted in the ceremonial form prescribed by the Pennsylvania marriage statutes.

■ Since the statute imposed an absolute personal incapacity to marry and not a mere regulation of marriage procedure, the rule announced in Buradus v. Gen. Cement Prod. Co., 1946, 159 Pa. Super. 501, 48 A.2d 883, affirmed 1947, 356 Pa. 349, 52 A.2d 205, is not applicable. Nor does the Marriage Law of 1953 [6] affect the problem, as the complainant suggests. True, section 5 of that law provides that "No license to marry shall be issued by any clerk of the orphans' court * * * (h) To a person divorced by his or her former spouse on the grounds of adultery, for the marriage of such person to the person with whom the crime of adultery was committed, during the lifetime of the former husband or wife." [7] But that law repealed section 9 of the Act of 1815 only to the extent that the latter was inconsistent with its provisions.[8] The Marriage Law dealt in this regard only with licensing regulations and moreover section 23 expressly provided that the law should not change the existing law with respect to common law marriage.[9] It, therefore, did not repeal the provisions of section 9 of the Act of 1815 insofar as they impose an absolute incapacity to marry under the circumstances described whether ceremonially or at common law.

■ Since the complainant was never legally married to Warrenberger she was not his widow in the eyes of the Pennsylvania law. And because her child Ellen was born before her divorce from her former husband and no subsequent valid marriage with Warrenberger took place she was correctly held not to be a child of his entitled to take a share of his estate under Pennsylvania law. The district court, therefore, did not err in holding that neither the complainant nor her child were entitled to insurance benefits with respect to Warrenberger under the Social Security Act.

The judgment of the district court will be affirmed.

---

4. Hornbake v. Hornbake, 1919, 72 Pa. Super. 605; Caviston v. Lang, 1943, 152 Pa.Super. 51, 31 A.2d 566.

5. See Restatement, Conflict of Laws § 132, and compare § 130.

6. Act of August 22, 1953, P.L. 1344, 48 P.S.Pa. § 1–1 et seq.

7. 48 P.S.Pa. § 1–5(h).

8. 48 P.S.Pa. § 1–24.

9. 48 P.S.Pa. § 1–23.