Magdalena JIMENEZ, by Ramon Jimenez, her father and next friend, Individually and on behalf of all others similarly situated, et al., Plaintiffs,

v.

Elliot RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

Robin BOOKER, by Francine Booker, her mother and next friend, Plaintiff,

v.

Elliot RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

Nos. 71 C 1436, 71 C 2628.

United States District Court, N. D. Illinois, E. D.

Jan. 30, 1973.

Jane Stevens, Woodlawn Neighborhood Legal Services, Chicago, Ill., for plaintiffs.

Marvin E. Gavin, Regional Atty., Donald E. Phelps, Asst. Regional Atty., Department of Health, Education & Welfare, Chicago, Ill., for defendant.

Before FAIRCHILD, Circuit Judge, and AUSTIN and DECKER, District Judges.

## MEMORANDUM OPINION and JUDGMENT ORDER

PER CURIAM.

These consolidated cases challenge the constitutionality of two sections of the Social Security Act inasmuch as they discriminate against a particular class of illegitimate children. A three-judge panel has heard plaintiffs' claims, jurisdiction for which is based upon 42 U.S.C. § 405(g) (1970). For the reasons stated below, this court grants defendant's motion for summary judgment and dismisses both cases.

Social Security benefits may be obtained on behalf of the children of an insured individual entitled to disability or death benefits under the Act. 42 U.S.C. § 402(d) (1970). In determining whether an applicant is the child of an insured, 42 U.S.C. § 416(h) establishes three independent tests. First, an applicant is the child of an insured if he can inherit the insured's personal property under the law of intestate succession of the state of the insured's domicile. 42 U.S.C. § 416(h)(2)(A) (1970). Second, an applicant is the child of an insured if his parents went through a marriage ceremony that resulted in a purported, but nevertheless invalid, marriage. The invalidity must have been caused by a defect in the marriage procedure or by the failure of one of the parents to dissolve a prior marriage. 42 U.S.C. § 416(h)(2)(B) (1970). The third statutory definition of child encompasses those of the insured's issue who do not come within the first two provisions. An applicant for benefits is a child under 42 U.S.C. § 416(h)(3)(B) if before the commencement of the insured's period of disability (1) he made an written acknowledgment that the applicant is his child, or (2) a court decree established the insured's paternity of the applicant, or (3) a court has ordered the insured to support the applicant because of paternity, or (4) if the Secretary finds sufficient evidence that the insured is the parent of the applicant and contributed to his support when the disability began. It is the treatment of this third class of children that is challenged in the instant case.

As noted above, 42 U.S.C. § 416(h)(3)(B) requires that the applicant be a child of the insured when his disability began. Ramon Jimenez has three illegitimate children, Magdalena, Alicia and Ramon, Jr. Because Alicia and Ramon, Jr. were born after their father became disabled, they are not considered his children under § 416(h)(3)(B) and may not claim benefits under the Act, even though Ramon, Sr. has supported and acknowledged them as his own. The situation of Magdalena Jimenez and Robin Booker is different from that of Alicia and Ramon, Jr in that both of these illegitimate

children were born to their parents before the disability commenced. However, they were not entitled to receive benefits because their families exceeded the maximum benefit limitations of 42 U.S.C. § 403(a) (1970). Although the validity of § 403(a) was originally a substantial part of these lawsuits, the Supreme Court recently affirmed two three-judge court rulings which held § 403(a) unconstitutional.[1] Since we have no reason to believe that the Social Security Administration will fail to comply with those decisions,[2] a controversy no longer exists between defendant and plaintiffs Robin Booker and Magdalena Jimenez. Hence, their complaints are dismissed as moot and the subsequent scope of this opinion shall be limited to the constitutionality of § 416(h)(3)(B).

Prior to 1965, children who presently come within the § 416(h)(3)(B) definition of children were entirely excluded from receiving any benefits under the Act, even though the Act thereby discriminated between different classes of illegitimates.[3] In 1965, Public Law 89–97 added paragraph (3) to subsection (h) of § 416 and for the first time an entire category of illegitimate children became entitled to receive benefits through a parent's Social Security account, subject to the now challenged restriction that the event which triggered a child's entitlement (e. g., court decree or written acknowledgment) must occur before the onset of the insured's disability. It is clear that, both before and after the amendment, the statute does not simply discriminate against all illegitimate children, for a child could be born out of wedlock and hence illegitimate, yet nevertheless qualify under the first two statutory definitions of "child" contained in § 416(h)(2)(A) and (B). Thus, the statute effectively creates two categories of illegitimates and treats each differently.

■ Defendant urges us to uphold the constitutionality of this restriction because it is a reasonable means of preventing spurious claims. Plaintiffs assert that this restriction is an unconstitutional denial of due process because it is not rationally related to the objectives of the Social Security Act and because there are less restrictive alternatives available to prevent spurious claims. In considering these arguments, this court may not substitute its judgment of social policy for that of the legislature, but rather must consider whether Congress has the *power* to discriminate between classes of illegitimates as it has done in the Social Security Act. Dandridge v. Williams, 397 U.S. 471, 486, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).[4]

1. Griffin v. Richardson, 346 F.Supp. 1226 (D.Md.1972), aff'd, 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972); Davis v. Richardson, 342 F.Supp. 588 (D.Conn. 1972), aff'd, 409 U.S. 1069, 92 S.Ct. 678, 34 L.Ed.2d 659 (1972). *Accord,* Maracle v. Richardson, 348 F.Supp. 234 (W.D. N.Y.1972); Morris v. Richardson, 346 F. Supp. 494 (N.D.Ga.1972).

2. Prior to the Supreme Court's disposition of the cases cited in note 1, *supra,* the Social Security Administration stated that it would refrain from following § 403(a) pending appeal of the decisions declaring it unconstitutional. SSA Program. Circular No. 199, September 29, 1972.

3. This exclusion was consistently upheld by the courts, although the precise question of its constitutionality does not appear to have been raised. *E. g.,* Warrenberger v. Folsom, 239 F.2d 846 (3d Cir. 1956); Robles v. Folsom, 239 F.2d 562 (2d Cir.

1956), cert. denied, 353 U.S. 960, 77 S.Ct. 869, 1 L.Ed.2d 911 (1957).

4. As the Court states in Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1961): "In judging the permissibility of the cut-off provisions of § 202(n) [of the Social Security Act] . . ., it is not within our authority to determine whether the Congressional judgment expressed in that section is sound or equitable, or whether it comports well or ill with the purposes of the Act. 'Whether wisdom or unwisdom resides in the scheme of benefits set forth in Title II, it is not for us to say. The answer to such inquiries must come from Congress, not the courts. Our concern here, as often, is with power, not with wisdom.' Helvering v. Davis, . . . 301 U.S. [619 (1937)] at page 644 [, 57 S.Ct. 904, at page 910, 81 L.Ed. 1307]."

■ The power of Congress to discriminate is limited by the due process clause of the fifth amendment, which includes the principle of equal protection when a federal statute discriminates in an invidious manner or deprives persons of their fundamental constitutional rights. Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 4, 30 L.Ed.2d 13 (1971); Shapiro v. Thompson, 394 U.S. 618, 641–642, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). In analyzing an alleged denial of equal protection, the Supreme Court has utilized basically two tests depending on the type of interest involved. *See generally* Developments in the Law Equal Protection, 82 Harv.L.Rev. 1065 (1969). The traditional test consists of a two-part inquiry that first identifies the purposes or objectives of a legislative scheme and then asks whether the challenged discrimination bears a rational relationship to one of those purposes. Moreover, the purpose need not have been a main objective of the statute or even one that the legislators had in mind when they passed it. Flemming v. Nestor, 363 U.S. 603, 612, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). The second test, that of the compelling state interest, is not applicable in this case because the Supreme Court has held that a challenged discrimination involving public welfare benefits must stand if it is "rationally based and free from invidious discrimination." Dandridge v. Williams, *supra,* 397 U.S. at 487, 90 S.Ct. at 1162 (1970). *Accord,* Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Richardson v. Belcher, *supra;* Flemming v. Nestor, *supra.* Therefore, inasmuch as § 416(h)(3) affects an interest in welfare benefits, it must be considered valid unless it is shown to be irrational and invidious.

■ However, in addition to asserting an interest in public welfare benefits, plaintiffs also assert an independent constitutional right to be free from a classification based solely upon their status at birth. They claim that this classification is subject to the compelling state interest test commonly found in racial discrimination cases such as Bolling v. Sharpe, *supra.* But, an examination of recent Supreme Court decisions on the rights of illegitimates convinces us that no such standard is applicable to a legislative classification based on legitimacy at birth and that this interest is also subject to the traditional rational relationship test.[5] Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971); Glona v. American Guarantee & Liability Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). Furthermore, the fact that § 416(h)(3)(B) does not apply to all illegitimate children but only to a well-defined category of them distinguishes this case from those just cited and from the Court's recent decision in Gomez v. Perez, —— U.S. ——, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), suggesting that factors other than illegitimacy might account for the discrimination here.

■ The Social Security Administration has asserted that the prevention of spurious claims is a factor that rationally supports the distinction made in § 416(h)(3)(B) because the purpose of the Act is to replace the support lost by

---

5. As indicated at note 1, *supra*, it is unconstitutional to discriminate against children falling within § 416(h)(3)(B) by eliminating their benefits in the manner prescribed by § 403(a). In three out of the four cases cited in note 1 the courts reached that result by applying the traditional rational relationship test. In Griffin v. Richardson, *supra*, the court held that § 403(a) was unconstitutional under either the traditional standard or the compelling state interest test. Thus, our reliance upon the traditional test seems well-placed, despite the fact that our holding vindicates the constitutionality of the discrimination in this notably different context.

a child when his father becomes disabled. Watts v. Veneman, 334 F.Supp. 482, 486 (D.D.C.1971). *Accord,* Hagler v. Finch, 451 F.2d 45 (9th Cir. 1971), cert. denied, 405 U.S. 1071, 92 S.Ct. 1522, 31 L.Ed.2d 805 (1972); Perry v. Richardson, 445 F.2d 677 (6th Cir. 1971). We agree. In the letters filed with this court subsequent to oral argument, the Administration cited examples which make it clear to us that, given the knowledge of the Act's provisions absent § 416(h)(3)(B), an insured would have both the opportunity and the financial temptation to file a spurious claim after his disability began. Thus, an insured's cash payments on account of his disability or old age can be increased by as much as one-half his individual entitlement, if he is able to claim one child as his dependent. To the unscrupulous person, all that prevents him from realizing such a gain is the mere formality of a spurious acknowledgment of paternity or a collusive paternity suit with the mother of an illegitimate child who is herself desirous or in need of the additional cash. Since a child's benefits are paid to the parent having custody of the child as "representative payee," the principals to such a scheme would have no trouble in realizing the fruits of their illegal venture. Moreover, collusive paternity suits and fraudulent acknowledgments of paternity would be extremely difficult to detect whether the Administration continued to rely upon its present procedures or was forced by this lawsuit to seek alternatives to § 416(h)(3)(B).[6]

On the other hand, the requirement that § 416(h)(3)(B) children be born before the onset of their parent's disability is based on the very simple, self-evident assumption that a person with nothing to gain from a spurious acknowledgment of paternity is not as likely to do so as one who could thereby increase his monthly income by one-half. Indeed, the probability is slight that an insured would make a spurious acknowledgment in anticipation of becoming disabled sometime in the future.

To this plaintiffs reply that the inter-personal consequences of such an acknowledgment are sufficient to discourage all but a few spurious claims and that the hardships befalling children like Alicia Jimenez and Ramon Jimenez, Jr. outweigh the adverse effects of a few fraudulent claims. They do not dispute the fact that the prevention of such abuse is a valid reason to discriminate, Hagler v. Finch, *supra,* but rather assert that there are less restrictive means of accomplishing this objective. However, even if such measures existed, their use is not constitutionally mandated under traditional notions of equal protection. Moreover, although plaintiffs assert that more restrictive regulations and internal administrative procedures could reduce such claims, they have not told us just how the Social Security Administration is to detect a collusive paternity suit or fraudulent acknowledgment of paternity. Surely the parties to the collusion, who are in pari delicto, have little incentive to come forward and confess the error of their ways. And it would truly be the exceptional father who, having sired a child out of wedlock, would subsequently come forward, acknowledge his real paternity, and seek to have his child removed from the rolls of public welfare.

In sum, it must be remembered that plaintiffs bear the burden of proving § 416(h)(3)(B) to be an irrational means of preventing spurious claims. At best they have merely asserted that there are better ways to do so. That these plaintiffs may in fact be the children of Ramon Jimenez, Sr. suggests that it might have been more benevolent for Congress to allow them to share in these benefits. However, the question before us is one of congressional power and not wisdom. Having found § 416(h)(3)(B) to be rational we

---

6. The practical difficulties of proof in these situations have not escaped judicial attention. *See e. g.,* Jerry Vogel Music Co. v. Edward B. Marks Music Corp., 425 F.2d 834, 836 n. 4 (2d Cir. 1969).

cannot second guess congressional wisdom even as applied to these particular facts. Since neither this nor any other court should alter a legislative judgment until convinced that Congress lacks the power to do what it has done, § 416(h)(3)(B) should be considered a valid exercise of legislative judgment until there exists convincing proof to the contrary.

Case dismissed.

FAIRCHILD, Circuit Judge (dissenting).

I respectfully dissent from the dismissal of the claims of Eugenio and Alicia Jimenez (the children born after Ramon's disability began). Legitimate children born after the beginning of disability, and otherwise qualified, would receive benefits, as would children born before the beginning of disability, whether legitimate or illegitimate. But no matter how clearly it can be shown that Eugenio and Alicia are the dependent children of Ramon, the statute excludes them from benefits which it grants to legitimate children otherwise similarly situated. I realize that a child who is unable to establish paternity with the certainty we accord to a child born to a married mother may properly be required to supply proof achieving a particular level of certainty, but this statutory exclusion is absolute, without regard to the certainty with which paternity might be proved.

I believe this exclusion of a class of dependent children from social security benefits effected by 42 U.S.C. § 416(h)(2) and (3) to be constitutionally impermissible discrimination.

Recent decisions of the Supreme Court make it clear that statutory compensation schemes may not, in awarding benefits, prefer one class of dependent children over another according to their status of birth. Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Richardson v. Davis, 409 U.S. 678, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972), affirming Davis v. Richardson, 342 F.Supp. 588 (1972); Richardson v. Griffin, 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972), affirming Griffin v. Richardson, 346 F. Supp. 1226 (D.Md., 1972). Significantly, the Court was not unmindful in these cases that children born out of wedlock presented difficult problems of proof as to actual dependency. In *Weber*, the Court indicated that would respect a state's method of determining the genuineness of individual claims. However, the Court made it clear that once dependency was established, the Constitution required that all dependents—whether legitimate or illegitimate—must be treated equally. 406 U.S. at 175, 92 S.Ct. 1400.

In a very recent decision invalidating state discrimination against illegitimate children in a system designed to provide for the needs of children generally, the Supreme Court said: "We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination." Gomez v. Perez, —— U.S. ——, 93 S.Ct. 872, 875, 35 L.Ed.2d 56, 1973.

The sole justification offered for the total exclusion of a class of dependent children [1] is that there may reasonably be thought to be a greater likelihood of plausible spurious claims among appli-

---

1. As the majority opinion makes clear, eligibility for social security children's benefits is not statutorily defined simply according to the status and time of birth. Nevertheless, I believe, in operation, § 416(h)(2) and (3), excludes from eligibility virtually all children of an insured individual who are born out of wedlock after the entitling event. It has never been suggested by the Secretary that even a significant percentage of this class will be able to establish their eligibility under § 416(h)(2)(A) and (B).

cants born after the event which triggers entitlement of an alleged father to benefits.[2]

While I would agree that the need to guard against fraudulent claims is surely a valid legislative goal, I cannot agree that a total exclusion of a class of claims—some of which will be demonstrably valid—is a reasonable means of achieving that goal.

Carrington v. Rash, 380 U.S. 89, 92–97, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) establishes the principle that a statutory classification which totally excludes a class of persons from important benefits denies equal protection when less drastic means are available to effectuate the interest purportedly promoted by the classification. I think this principle is applicable here. In the context of a statutory compensation scheme, the total exclusion of a class of dependent children is simply too drastic a means to cope with the problem of spurious claims.

It is my opinion that insofar as portions of § 416(h)(3) constitute a requirement that an applicant be born before the beginning of disability of an insured who is alleged to be the applicant's father, they are discriminatory and invalid. I would enjoin application of this requirement to plaintiff Eugenio and Alicia and others similarly situated.

I join Judge Austin and Judge Decker in the decision with respect to Magdalena Jimenez and Robin Booker.

2. This proposition is itself subject to question. Assuming that paternal acknowledgement is required, a number of factors must coalesce in producing a spurious but plausible claim. The insured individual must be willing to falsify in the face of criminal penalties and the societal and interpersonal condemnation to which he will be exposed. He must be willing to expose himself to legal obligations of support. The child's birth and the mother's situation must be consistent with the paternity asserted. And the mother must be willing to falsify. On the other hand, advances in the ability to exclude paternity as a result of blood tests greatly increase the possibility of detecting spurious claims. Studies suggest that if a sufficient number of blood typing tests are utilized, "the average chance of obtaining an exclusion may eventually reach 80 to 90 per cent." Kramer, Illegitimacy: Law and Social Policy, Chapter 4, Part II, sub-part (i); Blood Typing (1971), pp. 123–127.