Helen CHLYSTEK, Appellant,

v.

Joseph CALIFANO, Individually and in his capacity as the Secretary of Health, Education and Welfare, Appellee.

No. 78-2453.

United States Court of Appeals,
Third Circuit.

Argued April 2, 1979.

Decided June 7, 1979.

Thomas C. Reed (argued), Pittsburgh, Pa., for appellant.

John Wojciechowski (argued), Baltimore, Md., Barbara Allen Babcock, Washington, D. C., Blair A. Griffith, U. S. Atty., John P. Panneton, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Mary Ellen Krober (argued), Norman J. Watkins, Edward G. Biester, Jr., Harrisburg, Pa., for the Commonwealth of Pennsylvania.

Before ADAMS, HUNTER and GARTH, Circuit Judges.

### OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Helen Chlystek appeals from the judgment of the district court, affirming the Appeals Council of the Social Security Administration (SSA), which denied her widow's benefits under the Social Security Act, 42 U.S.C. §§ 401-433 (1976) (Subchapter II—Federal Old-Age, Survivors, and Disability Insurance Benefits). The district court held that under Pennsylvania law, the claimant was not legally married to Adam Chlystek, the deceased wage earner, at the time of his death and therefore is not entitled to receive widow's benefits. We reverse.

### I.

The facts are uncontested. Adam Chlystek, the wage earner, married Cecilia Nicklas in 1927. In 1939 Helen Chlystek, the claimant here, and the wage earner began living together. On October 31, 1944 Cecilia Nicklas Chlystek divorced the wage earner on the ground of adultery. The claimant, then Helen Ondrako, was named in the divorce decree as the corespondent. The decree declared, pursuant to the Pennsylvania paramour statute, Pa.Stat.Ann. tit. 48, § 169 (Purdon Supp.1978), that Adam Chlystek and Helen Ondrako [Chlystek] were prohibited from marrying during the lifetime of Cecilia Nicklas Chlystek. App. at 156. The claimant and the wage earner continued to live together until the death of the wage earner on July 25, 1976. During that time, they held themselves out as man

and wife, but did not go through a ceremonial marriage either in Pennsylvania or in any other jurisdiction.[1]

Helen Chlystek first filed for social security benefits as the wife of the wage earner in 1971. That application and a second application filed in 1973 were denied because the Secretary determined that under Pennsylvania law Helen Chlystek was not married to Adam Chlystek. Following these determinations, the Chlysteks filed suit in the United States District Court for the Western District of Pennsylvania to compel the Register of Wills for Allegheny County to issue them a marriage license. They further sought a judgment declaring the Pennsylvania paramour statute to be an unconstitutional impediment to the right to marry. The district court dismissed the suit, finding no substantial federal question. This court vacated the district court judgment. *Chlystek v. Kane*, 529 F.2d 511 (3d Cir. 1975) (unpublished opinion). On remand the district court again dismissed the suit, 412 F.Supp. 20 (W.D.Pa.1976), and this court again reversed, instructing the lower court to address the federal constitutional issue. 540 F.2d 171 (3d Cir. 1976). Shortly before this court's second decision was filed, Adam Chlystek died. Cecilia Nicklas Chlystek was still living.

Helen Chlystek then filed a claim for widow's insurance benefits. After a hearing, the Administrative Law Judge denied the claim. The Appeals Council denied the claimant's request for review, rendering the ALJ's decision final. The claimant appealed to the district court, which affirmed the administrative determination.

II.

The sole question presented is whether Helen Chlystek is the "widow" of Adam Chlystek for the purpose of receiving benefits under the Social Security Act. The district court noted that under the Pennsylvania paramour statute, Adam and Helen Chlystek were precluded from marrying during the lifetime of Adam Chlystek's first wife. Therefore, the court held that the claimant could not be the legal "widow" of the wage earner. The statute provides:

The husband or wife, who shall have been guilty of the crime of adultery, shall not marry the person with whom the said crime was committed, during the life of the former wife or husband: but nothing herein contained shall be construed to extend to or affect or render other than legitimate any children born of the body of the wife during coverture.

Pa.Stat.Ann. tit. 48, § 169 (Purdon Supp. 1978). Despite its language, the statute has been interpreted as not requiring that the paramour be found guilty of adultery in a criminal proceeding; rather, an adjudication of adultery in a divorce proceeding is sufficient. *In re Lenherr's Estate*, 455 Pa. 225, 228–29, 314 A.2d 255, 257 (1974); *Kalmbacher v. Kalmbacher*, 63 Pa.D. & C. 195, 202 (1945).

The applicable section of the Social Security Act provides: "The widow (as defined in section 416(c) of this title) . . of an individual who died a fully insured individual, if such widow . . . [meets certain requirements] shall be entitled to a widow's insurance benefit . . . ." 42 U.S.C. § 402(e)(1). In determining family status, Congress intended the Secretary to apply state law:

An applicant is the . . . widow . . . of a fully or currently insured individual for the purposes of this subchapter if the courts of the State in which such insured individual [was] domiciled . . . at the time of death . . . would find that such applicant and such insured individual were validly married . . . at the time he died.

42 U.S.C. § 416(h)(1)(A). Because Adam Chlystek was domiciled in Pennsylvania at the time of his death, our task is to predict whether the courts of that state would find him for this purpose to have been validly married to Helen Chlystek.

1. Absent the prohibition of section 169, the claimant would have been able to establish that she had entered into a valid common law marriage with the wage earner. Pa.Stat.Ann. tit. 48, § 1–23 (Purdon 1965). *See Warrenberger v. Folsom*, 239 F.2d 846 (3d Cir. 1956).

In determining that Adam Chlystek and Helen Chlystek were not legally married, the district court considered itself bound by *Warrenberger v. Folsom*, 239 F.2d 846 (3d Cir. 1956). There, in a factually similar case, we considered whether the claimant was entitled to benefits under 42 U.S.C. § 402 as the wage earner's widow. The claimant was precluded from effecting a valid marriage with the wage earner solely by the operation of section 169. The state court had granted the claimant's first husband a divorce on the ground of adultery, naming the wage earner as the corespondent. Three years later, the claimant went through a ceremonial marriage with the wage earner. We held that section 169 rendered the second marriage invalid and denied widow's benefits to the claimant.

Our decision in *Warrenberger*, however, rested on the Pennsylvania Supreme Court's interpretation of section 169 in *In re Stull's Estate*, 183 Pa. 625, 39 A. 16 (1898). The decedent in *Stull* had been divorced in Pennsylvania by his former wife on the ground of adultery with the plaintiff. The plaintiff and the decedent were ceremonially married in Maryland, and then returned to Pennsylvania where they lived as man and wife. On the decedent's death, the plaintiff claimed that as his widow, she was entitled to the letters of administration of his estate. The court held that the paramour statute rendered the Maryland marriage invalid. It read the statutory language strictly: "[T]hey shall not marry [each other] at all, in any circumstances, or at any time, or any place, so long as the injured party is living. . . . The relation itself is absolutely prohibited, and hence is within the operative words of the statute, without any reference as to where the marriage occurs." 183 Pa. at 629, 39 A. at 16.

The Pennsylvania Supreme Court recently rejected the strict approach of *In re Stull's Estate*. We believe, therefore, that the new approach undermines the viability of *Warrenberger*. In *In re Lenherr's Estate*, 455 Pa. 225, 314 A.2d 255, 257 (1974), the court addressed whether the marriage between the decedent and the second wife should be recognized for the purposes of the marital exemption to the Pennsylvania Transfer Inheritance Tax. Leo Lenherr, the decedent, was divorced in Pennsylvania by his then wife, Anna Kelly Lenherr, on the ground of adultery. Sarah Barney was named in the divorce decree as the corespondent. Also that year, Sarah Barney was divorced in Pennsylvania by her then husband, William Barney, on the grounds of adultery, and Leo Lenherr was named as the corespondent in the decree. Two years later, in 1932, Leo Lenherr and Sarah Barney were ceremonially married in West Virginia. Both of their former spouses were still living. The Lenherrs returned to Pennsylvania where they lived as man and wife until the death of Leo Lenherr in 1971.

The *Lenherr* court adopted a more liberal approach to the application of section 169 to the marital relationship. The court said that it must "realize that the strength of the policy behind section 169 depends to a significant degree upon the incident of marriage under consideration." 455 Pa. at 230, 314 A.2d at 258. Thus, *Lenherr* viewed marriage as comprising a number of distinct incidents and analyzed whether section 169 should be applied to prohibit legal recognition of the particular incident in question. It pointed out that the state legislature had begun the process of distinguishing among the incidents of marriage by amending section 169 to provide that the legitimacy of children born to the second marriage is not to be denied despite the prior adjudication of adultery. Act of June 17, 1971, P.L. 174, § 1, *amending* Act of March 13, 1815, P.L. 150, § 9, Pa.Stat.Ann. tit. 48, § 169 (Purdon Supp.1978).

In stating the policy interest which section 169 seeks to protect, *Lenherr* interpreted the statute "not so much as a penalty upon the parties who failed to recognize the sanctity of the former marriage vow as it is intended to protect the sensibilities of the injured spouse. Were it otherwise, the prohibition would not be limited to the lifetime of that spouse." 455 Pa. at 231, 314 A.2d at 258–59. *See In re Stull's Estate*, 183 Pa. at 632, 39 A. at 18. The court reasoned that

the policy of section 169 would be fostered only if denying recognition of the particular incident of marriage:

> (1) could deter either the adulterous conduct during the valid marriage or the subsequent marriage of the guilty spouse and his or her paramour; or (2) could in any way spare the aggrieved former spouse the affront caused by such marriage.

455 Pa. at 232, 314 A.2d at 259. Denying the marital exemption, the court felt, would foster neither goal. Furthermore, the court pointed out that Pennsylvania had a strong statutory policy "that the property of two persons living as man and wife and held in their joint names with right of survivorship is in reality the product of their joint efforts and should pass to the survivor without the imposition of a tax." *Id.* at 232, 314 A.2d at 259. Recognizing the marriage for the purpose of permitting the use of the marital exemption would advance that state policy.[2]

We apply the reasoning of *Lenherr* to predict whether the Pennsylvania Supreme Court, if presented with a fact situation similar to that before us, would uphold the validity of the marriage for the limited purpose of affording widow's benefits to the surviving wife.[3] Initially, we believe

that there is a strong statutory policy in favor of awarding Helen Chlystek social security benefits. Old age benefits were designed to provide "for the decent support of elderly workmen who have ceased to labor." *Social Security Board v. Nierotko,* 327 U.S. 358, 364, 66 S.Ct. 637, 640, 90 L.Ed. 718 (1946). *See Coy v. Folsom,* 228 F.2d 276, 279 (3d Cir. 1955). The concept of joint effort is inherent in a statutory scheme that continues benefits to the surviving spouse based on the contributions of the wage earner.[4] In that sense, the rationale behind awarding widow's benefits on the wage record of the husband is similar to that stated by *Lenherr* for enacting a marital exemption.

Moreover, the policy of section 169 would not be furthered by denying widow's benefits to Helen Chlystek. First, we fail to see how denying widow's benefits at this stage would have deterred adulterous conduct during the first marriage. Certainly, the future availability of federal old age benefits would not be a key factor in the decision whether to engage in an adulterous relationship. Second, denying benefits to the claimant here would scarcely spare the aggrieved former spouse the affront which section 169 seeks to protect. Neither the former spouse nor the community will be

---

**2.** The Secretary stresses that in *Lenherr,* the parties had gone through a ceremonial marriage in West Virginia. Thus, he urges us to read *Lenherr* as nothing more than a conflicts of laws case following the familiar rule that the law of the place of the celebration of the marriage controls. Restatement (Second) of Conflict of Law § 283(2) (1971). *Lenherr* undeniably implicates conflict of law principles: in the course of the opinion the Pennsylvania Supreme Court weighed the policy in favor of uniform recognition of marriages performed in other jurisdictions as a factor in favor of deeming the marriage to be valid for the purpose of the Pennsylvania marital tax exemption. We do not believe, however, that the Court would have reached a different result in the *Lenherr* context even had no out of state marriage taken place. Certainly, the Pennsylvania courts would not want to encourage its citizens to avoid the application of the state's own marriage laws by fleeing the jurisdiction. Moreover, as noted, the court weighed other state interests in favor of recognizing the marriage.

**3.** The issue of entitlement to federal social security benefits is reserved for the federal administrative process and the federal courts. The Social Security Act has, however, adopted state law for determining family status. 42 U.S.C. § 416(h)(1)(A). Given the balancing approach adopted by *Lenherr,* we must predict how the Pennsylvania courts would weigh the competing interests if presented with the fact situation before us.

**4.** The statute itself provides that where the parties in good faith go through a marriage ceremony and a legal impediment unknown to the parties prevents the marriage from being valid, they will still be deemed to have been married for the purposes of awarding benefits. 42 U.S.C. § 416(h)(1)(B). This provision is not available to the claimant here, having never gone through a marriage ceremony with the wage earner. Nevertheless, it represents a congressional judgment that the goals of the social security system may supplant the technical requirements of state law.

made to endure the legitimization of the relationship.[5]

### III.

The policy interests which section 169 was enacted to promote would not be adversely affected by recognizing the marriage for the limited purpose of establishing the requisite family status under the Social Security Act. 42 U.S.C. § 416(h)(1)(A).[6] On balance, then, we believe that the federal and state interests in providing assistance to the aged would lead a Pennsylvania court not to apply section 169 to preclude recognition of this incident of the marital relationship.[7]

The judgment of the district court will be reversed.

---

5. Finally, we note that adultery is no longer subject to the full sanction of the state. In 1972 the Pennsylvania legislature amended the criminal code to eliminate the crime of adultery. Act of Dec. 6, 1972, P.L. No. 334, § 1, *formerly codified at* Pa.Stat.Ann. tit. 18, § 4505 (Purdon). We read the deletion as indicating a legislative judgment that adultery is to be regarded as less a matter for state regulation than at the time of *In re Stull's Estate.*

6. We wish to point out that the first wife, if she were receiving benefits based on the wage record of Adam Chlystek, would not be affected by our decision. The statute provides that "the widow and *every* surviving divorced wife" is entitled to a widow's insurance benefit, 42 U.S.C. § 402(e)(1) (emphasis supplied), provided that she meets certain other requirements. The existence of a surviving divorced wife receiving benefits does not in itself disqualify the widow. Moreover, the benefits received by the first wife would not be reduced. Under 42 U.S.C. § 403(a)(3)(C):

> When any of such individuals is entitled to monthly benefits as a . . . surviving divorced spouse under section 402(e) . . . of this title for any month, the benefit to which . . . she is entitled on the basis

of the wages and self-employment income of such insured individual for such month shall be determined without regard to this subsection, and the benefits of all other individuals who are entitled for such month to monthly benefits under section 402 of this title on the wages and self-employment income of such insured individual shall be determined as if no such . ' . . surviving divorced spouse were entitled to benefits for such month. Regardless of our decision, Cecilia Nicklas Chlystek would remain a "surviving divorced wife" whose entitlement to benefits would not depend on Adam Chlystek's marital status at the time of his death. There is no indication from the record, however, that Cecilia Nicklas is in fact receiving benefits on the wage record of Adam Chlystek.

7. Helen Chlystek has also asserted that section 169 is an unconstitutional infringement on her right to marry. *See, e. g., Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Because of our holding on the statutory issue, we do not reach her constitutional argument.